2004 UT App 210

**STATE of Utah, Plaintiff and Appellee,**

v.

**Gordon R. KING, Defendant and Appellant.**

**No. 20030069–CA.**

Court of Appeals of Utah.

June 24, 2004.

---

Elizabeth Hunt, Salt Lake City, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Jeffrey S. Gray, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before BILLINGS, P.J., JACKSON and ORME, JJ.

## OPINION

ORME, Judge:

¶ 1 Gordon R. King appeals his conviction of attempted forcible sexual abuse of a child in violation of Utah Code Ann. § 76–5–404

(1999).[1] Because we hold that the trial court failed to fully satisfy its responsibility to detect, probe, and eliminate juror bias during the jury selection process, we reverse King's conviction and remand for a new trial.

## BACKGROUND [2]

¶ 2 King was charged with sexual abuse of a child, in violation of Utah Code Ann. § 76–5–404.1 (1999).[3] After a preliminary hearing, King was bound over for trial. At trial, once the prospective jurors were sworn, the trial court explained that it would be asking them questions in order "to get a fair and impartial jury." During voir dire, the trial court read the Information to the prospective jurors, "to see if [the jurors] have any familiarity with the case or any strong feelings about the case."

¶ 3 After reading the Information, the court asked whether any of the prospective jurors had "formed an opinion about this case." Prospective Juror A[4] raised her hand, indicating that she had formed an opinion, and the court then asked if there was "anyone who because of the nature of the case believes they would be unable to be fair and impartial." When prospective Jurors A, B, C, D and E all raised their hands, the court explained that although "[t]he nature of the alleged crime is one that ... none of us look upon in favor[,] ... the defendant in this case is not convicted[ and t]he State has the burden of proving him guilty beyond a reasonable doubt." The court then asked if any of the prospective jurors were "of the opinion that, because of the mere nature of the case, [they] couldn't listen and be fair," to which Juror A again raised her hand.

¶ 4 Juror A indicated that she had formed an opinion and would be unable to be impartial and explained that she was previously "a protective services intake worker for [the] Division of Family Services." When asked by the court whether she had found that sexual abuse cases were sometimes founded and sometimes unfounded, she answered in the negative, much to the surprise of the court. The court was quick to explain to the other potential jurors that, in fact, "[s]ome of those cases are founded, some are unfounded." Juror A was not questioned further in the presence of the other prospective jurors but later told the judge in private that "children don't lie about sexual abuse."

¶ 5 The court then followed up with additional questions to prospective Jurors B, C, D, and E, "who previously indicated that they might have some difficulty with the nature of the case[ and] being fair," to determine if they could be "fair and impartial." In the course of questioning them, it became apparent that the affirmative responses of Jurors C and D were prompted by a previous personal or family situation involving sexual abuse.[5] The court then told all of the pro-

---

1. The State acknowledges some difficulty, apparently clerical in nature, with the way the conviction was entered. We are told an effort to correct the problem was not successful. Our resolution of this appeal moots the concern.

2. While King raises several issues on appeal, we recite only the facts necessary to resolve the dispositive issue.

3. Although King was originally charged with one count of aggravated sexual abuse of a child, a first degree felony in violation of Utah Code Ann. § 76–5–404.1 (1999), the jury convicted him of sexual abuse of a child, a second degree felony, and at sentencing the trial court reduced the conviction to a third degree felony, all under the same statute. While we cite to the statutory codification in effect at the time of the incidents giving rise to this case, the current version is not substantively different.

4. As a convenience to the reader, we assign a sequential letter to each prospective juror, in the order they are identified in the record.

5. Juror B stated that she "has three little girls at home," and she "would have a difficult time listening" to the testimony in this case. She indicated that her emotions would "[p]robably not" interfere with her ability to listen to the evidence and render an impartial verdict. Although it is unclear from the record whether counsel exercised a peremptory strike or she was excused for cause, Juror B did not ultimately serve on the jury panel.

Juror E responded in the negative to this question posed by the trial court: "Have you or any of your family members ever been the victim of a sexual crime?" However, when the court later questioned Juror E in private, it became apparent that her "best friend's daughter" had allegedly been abused, and it was this experience that prompted her prior indication of potential diffi-

spective jurors that it would speak in private to those who had "some personal matters that they want to discuss." The court identified Jurors A, C, and D as three·such prospective jurors,[6] and asked whether "there [was] anyone else who either has been the victim of abuse or has had a family member or a close personal friend who has been the victim of abuse." [7] In response to this question, "a number of other hands" were raised, and prospective Jurors F, G, H, I, J, and K were identified for the record. Then the court asked if any of those six were "of the opinion that [their experience or history regarding abuse] would interfere with [their] ability to be fair and impartial." Prospective Juror G raised her hand, and she was subsequently excused for cause.

¶ 6 Thus, a total of eleven prospective jurors—over one third of the pool of prospective jurors—indicated that either they, a family member, or a friend had been the victim of sexual abuse, and/or that they would have some difficulty being fair and impartial. The trial court then spoke in private to nine of those eleven jurors. The court spoke to each of the five prospective jurors—Jurors A, B, C, D, and E—who originally indicated that because of the nature of the case, they would be unable to be fair and impartial. Four of those five were removed for cause, and none of them ultimately served on the jury panel. However, the court only spoke to four of the six prospective jurors—Jurors G, H, J, and K—who indicated that they "ha[ve] been the victim of abuse or ha[ve] had a family member or a close personal friend who has been the victim of abuse." Of those four, Jurors G and J had each been the victim of sexual abuse and were excused for cause. Juror H stated that his wife had been abused "when she was a child," and although he attested to his ability to remain impartial, he was evidently removed by the State with a peremptory

strike.[8] Juror K indicated that her cousin had accused her uncle of sexual assault, and although she was not removed for cause, she did not ultimately serve on the jury.

¶ 7 Thus, for one reason or another, *none* of the prospective jurors that the trial judge spoke to about their ability to be impartial notwithstanding the nature of the case, ultimately served on the jury. However, two of the jurors that eventually served on the panel that found King guilty were not inquired of by the trial court even though they had indicated that they, a family member, or a friend had been the victim of abuse. From all that appears in the record, Jurors F and I were not questioned, unlike the others similarly situated, as to the circumstances of their experience with sexual abuse, or probed as to its impact on their ability to be fair and impartial.

¶ 8 King now appeals his conviction and claims that those two unquestioned jurors were presumptively biased, entitling him to a new trial due to the court's failure to investigate and eliminate juror bias through voir dire.

## ISSUE AND STANDARD OF REVIEW

¶ 9 King argues that the trial court did not fulfill its responsibility to investigate and eliminate potential juror bias, which surfaced during voir dire. He contends that Jurors F and I, who indicated that they either had been a victim of abuse, or had a family member or a close personal friend who had been abused, were presumptively biased, and that their service on the panel denied him the right to trial by an impartial jury. Although the State cannot account for why the two jurors went unquestioned, nor even theorize a logical reason for inquiring of only four out of six prospective jurors who had answered similarly, the State's position is that

---

culty with this case. Juror E was subsequently excused for cause.

6. Jurors A, C, and D were each subsequently excused for cause because of experiences with sexual abuse that made them unable to be fair and impartial.

7. Even though the trial court's question did not specifically refer to sexual abuse, it is clear from

the context that this is the type of abuse to which it was referring.

8. Peremptory challenges were exercised by counsel off the record, but the State maintains that its second peremptory strike was used to dismiss this juror.

bias cannot be presumed because the record does not firmly establish that the jurors in question had themselves been victims of sexual abuse and that King therefore cannot demonstrate any prejudicial error.

¶ 10 " 'We review challenges to the trial court's management of jury voir dire under an abuse of discretion standard. Generally, the trial court is afforded broad discretion in conducting voir dire, "but that discretion must be exercised in favor of allowing discovery of biases or prejudice in prospective jurors." ' " *Depew v. Sullivan,* 2003 UT App 152, ¶ 10, 71 P.3d 601 (citations omitted), *cert. denied,* 77 P.3d 338 (Utah 2003). " 'When comments are made which facially question a prospective juror's impartiality or prejudice, an abuse of discretion may occur unless the challenged juror is removed by the court or unless the court or counsel investigates and finds the inference rebutted.' " *State v. Woolley,* 810 P.2d 440, 443 (Utah Ct.App.) (quoting *State v. Cobb,* 774 P.2d 1123, 1126 (Utah 1989)), *cert. denied,* 826 P.2d 651 (Utah 1991).

## THE RIGHT TO AN IMPARTIAL JURY

¶ 11 "Article I, section 12 of the Utah Constitution and the sixth amendment to the United States Constitution guarantee a criminal defendant the right to a trial by an impartial jury." *State v. Woolley,* 810 P.2d 440, 443 (Utah Ct.App.), *cert. denied,* 826 P.2d 651 (Utah 1991). *See State v. Bishop,* 753 P.2d 439, 448 (Utah 1988). "The Due Process Clause likewise guarantees a criminal defendant's right to an impartial jury." *Mu'Min v. Virginia,* 500 U.S. 415, 439 n. 1, 111 S.Ct. 1899, 1912 n. 1, 114 L.Ed.2d 493 (1991) (Marshall, J., dissenting). *See Ristaino v. Ross,* 424 U.S. 589, 595 n. 6, 96 S.Ct. 1017, 1020 n. 6, 47 L.Ed.2d 258 (1976). Further, Utah Code Ann. § 77–1–6(1)(f) (2003) affords defendants in criminal prosecutions the right "[t]o a speedy public trial by an impartial jury." Since "[j]uror impartiality is a mental attitude of appropriate indifference," *Woolley,* 810 P.2d at 443 (internal quotations and citation omitted), adequate voir dire is necessary to determine each juror's mental attitudes, whether derived from relevant past experiences or otherwise, in order to ensure that a defendant receives an impartial jury.

¶ 12 "The purpose of voir dire of a jury panel is 'to provide a tool for counsel and the court to carefully and skillfully determine, by inquiry, whether biases and prejudices, latent as well as acknowledged, will interfere with a fair trial if a particular juror serves in it.' " *Salt Lake City v. Tuero,* 745 P.2d 1281, 1283 (Utah Ct.App.1987) (quoting *State v. Ball,* 685 P.2d 1055, 1058 (Utah 1984)). *"Voir dire* examination serves the dual purposes of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges." *Mu'Min,* 500 U.S. at 431, 111 S.Ct. at 1908. Thus, "[a] challenge to an individual juror may be either peremptory or for cause." Utah R.Crim. P. 18(c)(2). If the prospective juror exhibits "strong and deep impressions," *State v. Wach,* 2001 UT 35, ¶ 41, 24 P.3d 948 (internal quotations and citations omitted), which "reasonably lead the [trial] court to conclude the juror is not likely to act impartially," Utah R.Crim. P. 18(e)(14), the juror should be excused for cause in order to effectuate federal and state law, which guarantee a defendant the right to an impartial jury.

¶ 13 Because a juror may appear to have questionable attitudes, which do not rise to the level of unconstitutional partiality, "each side is entitled to four peremptory challenges" in noncapital felony cases, and "no reason need be given" for their exercise. Utah R.Crim. P. 18(d). The Utah Supreme Court has instructed that in order to effectuate the dual purposes of voir dire, "trial courts can and should conduct voir dire proceedings in a way which not only meets constitutional requirements, but also enables litigants and their counsel to intelligently exercise peremptory challenges ... to eliminate bias and prejudice from the trial proceedings." *State v. James,* 819 P.2d 781, 798 (Utah 1991).

¶ 14 "Once a juror's impartiality has been put in doubt, a trial judge *must* investigate by further questions to determine if the juror has merely 'light impressions' or impressions which are 'strong and deep' and which will affect the juror's impartiality."

*Woolley,* 810 P.2d at 443 (quoting *State v. Julian,* 771 P.2d 1061, 1064 (Utah 1989)) (emphasis added). "Light impressions" are those dispositions or preconceived notions that "leave the mind open to a fair consideration of th[e] testimony"; in contrast, "strong and deep impressions . . . will close the mind against the testimony that may be offered in opposition to them." *Id.* (internal quotations and citations omitted).

¶ 15 Once some indication of prejudice arises, the trial court must question the juror to determine where the juror is situated on the partiality continuum—with light impressions at one end, and strong and deep impressions at the other.

> The Utah Supreme Court has consistently emphasized that "it is [the trial judge's] duty to see that the constitutional right of an accused to an impartial jury is safeguarded," *State v. Dixon,* 560 P.2d 318, 319–20 (Utah 1977), and has reversed criminal convictions based solely on the appearance that such right may have been jeopardized.

*Woolley,* 810 P.2d at 442 (alteration in original) (footnote omitted).

## ANALYSIS

¶ 16 The issues in this case are whether the two jurors in question put their impartiality in doubt when they indicated that either they, a family member, or a friend had been the victim of abuse, and if so, whether the trial court's failure to elicit further information that would have illuminated the jurors' frame of mind jeopardized Defendant's right to an impartial jury. The State counters Defendant's affirmative answer to both of these questions by pointing out that the record does not conclusively establish that the jurors in question were actually

biased and that Defendant neither attempted to have the jurors removed for cause nor used a peremptory strike.

¶ 17 It seems difficult to suggest the jurors's impartiality was not put in doubt given the trial court's care to inquire carefully of each of the several other prospective jurors who had similarly responded.[9] This impression is confirmed when one learns, as previously noted, that all nine other prospective jurors similarly responding did not serve on the jury. Indeed, the majority of these nine were excused for cause.

¶ 18 We cannot be certain of where on the partiality spectrum the two jurors would have been located. Defendant would have us presume that each juror recently had a parallel experience to the one charged in the instant case, thus establishing irrefutable bias. The State would locate the jurors at the opposite end of the spectrum and have us assume that each juror's former roommate merely had a distant relative who had a dissimilar experience with abuse a long time ago, in a galaxy far away. However, it is unnecessary to speculate as to the degree of partiality each of the two jurors might have possessed because it is clear that the jurors' responses "raised a facial question as to [their] impartiality, thus requiring further probing by the trial judge." *State v. Woolley,* 810 P.2d 440, 444 (Utah Ct.App.1991).

¶ 19 The question the trial court asked was broad enough to encompass the possibility that the jurors who responded affirmatively had close family members who were victims of sexual abuse or were themselves victims of abuse. As such, the court had a "duty to probe further when potential

---

9. The trial court was certainly thorough in its probing of each of the prospective jurors it spoke to, but there is no record that the court spoke to the two jurors in question. It is surprising that between the attorneys, the judge, and the jurors themselves, no one remembered to follow through with the court's plan to also speak to each of these two jurors in private. Although we fully acknowledge the possibility that it was discovered—perhaps through passing notes, an exchange of winks and nods, or an informal meeting in chambers—that these two jurors had only

a tangential connection to a sex offense, "[u]nder the Utah Constitution, district courts are courts of record." *Briggs v. Holcomb,* 740 P.2d 281, 282 (Utah Ct.App.1987). *See* Utah Const. art. VIII, § 1. "[I]n the face of that requirement," district courts must "consistently mak[e] a record of all proceedings." *Briggs,* 740 P.2d at 282–83. Accordingly, we cannot speculate that the matter was satisfactorily resolved off the record; we must base our decision solely on what is in the record.

bias was detected."[10] *Id.* at 447. If potentially biased jurors are not rehabilitated in the course of the trial court's questioning, they should be excused for cause. *See State v. Brooks,* 631 P.2d 878, 884 (Utah 1981) (noting that jurors who "expressed strong feelings of anger and frustration arising out of their personal experiences as victims" of similar crimes could not be rehabilitated). On the other hand, the court may determine, through sufficient questioning, that the juror would be unbiased. *See Salt Lake City v. Tuero,* 745 P.2d 1281, 1283 (Utah Ct.App. 1987) (holding, in a DUI prosecution, there was no abuse of discretion where "the [trial] court made significant efforts to determine if the potential juror could remain unbiased in light of his wife's experience with a drunk driver"). *See also State v. Moton,* 749 P.2d 639, 643 (Utah 1988) ("[T]he trial court correctly concluded by a process of logic and reason, based upon common experience, that the prospective juror's impressions were not so 'strong and deep' as to constitute bias which would close her mind against testimony that may be offered.").

¶ 20 It is impossible to require jurors to check their life experiences at the door, but biased jurors, who cannot be rehabilitated after sufficient questioning, must be excused for cause. If there is any doubt as to the ability of a potential juror to act impartially, the trial court should remove that person from the panel. The court must consider the totality of the circumstances to understand the juror's state of mind and evaluate the likelihood that the juror's attitudes and experiences would prejudicially affect either party. The similarity between the crime charged and the experience that affected the juror, along with the amount of time that has passed since the juror's experience,

are important considerations for the trial court in determining whether the juror will act fairly and impartially.[11]

¶ 21 "The trial court has traditionally been given considerable latitude as to the manner and the form of conducting the voir dire examination and is only restricted in that discretion from committing prejudicial error." *Id.* "Nevertheless, we also view the exercise of discretion in light of the fact that it is a simple matter to obviate any problem of bias simply by excusing the prospective juror and selecting another." *Jenkins v. Parrish,* 627 P.2d 533, 536 (Utah 1981). "The level of investigation necessary once voir dire reveals potential juror bias will vary from case to case and is necessarily dependent on the juror's responses to the questions asked." *Woolley,* 810 P.2d at 445. However, in this case, there is no record of *any* investigation into the state of mind of two of the potentially biased jurors. In-depth psychoanalysis of such jurors is unnecessary, but the trial court must be thorough in questioning all potentially biased jurors and make a commonsense judgment as to whether a particular juror will act impartially.[12]

¶ 22 It is immaterial that neither of the two jurors in question responded affirmatively when the judge initially asked whether their experience "would interfere with [their] ability to be fair and impartial," because when "a trial court asks a prospective juror merely whether he can be 'impartial,' the court may well get an answer that is the product of the juror's own confusion as to what impartiality is." *Mu'Min v. Virginia,* 500 U.S. 415, 443, 111 S.Ct. 1899, 1914 (1991) (Marshall, J., dissenting) (footnote omitted).

10. As provided in rule 18, "[t]he judge shall determine the method of selecting the jury," Utah R.Crim. P. 18(a), and "[t]he court may permit counsel or the defendant to conduct the examination of the prospective jurors or may itself conduct the examination." Utah R.Crim. P. 18(b). Thus, counsel's questioning may also rehabilitate potentially biased jurors.

11. As provided in the Utah Rules of Criminal Procedure, "[n]o person may serve as a juror ... unless the judge is convinced the juror can and will act impartially and fairly." Utah R.Crim. P.

18(e)(14). "Although not an evidentiary standard at all, the term 'convinced' implies a high standard for judicial decision-making." Utah R.Crim. P. 18 advisory committee note.

12. As previously indicated, the trial court dutifully executed its responsibility to investigate and root out potential bias with respect to all but two of the prospective jurors. Regrettably, Jurors F and I somehow slipped through the cracks and ended up on the jury panel that ultimately convicted King.

"It is unrealistic to expect that any but the most sensitive and thoughtful jurors (frequently those least likely to be biased) will have the personal insight, candor and openness to raise their hands in court and declare themselves biased." *State v. Ball*, 685 P.2d 1055, 1058 (Utah 1984). The road to appropriate determinations regarding impartiality is not so direct.

¶ 23 The present case provides perfect illustrations of this phenomenon: One of the first questions the court asked after reading the Information was whether "there is anyone who[,] because of the nature of the case[,] believes they would be unable to be fair and impartial." As previously discussed, five prospective jurors responded to this question, and none of them ended up on the jury panel. Jurors A, B, C, D, and E could be considered "sensitive and thoughtful jurors [with] the personal insight, candor and openness to raise their hands in court and declare themselves biased." *Id.* But it took a question finely honed to the circumstances of this case and additional prodding by the trial court to discover that other prospective jurors were also possibly biased. Once the trial court learned what had prompted those first five prospective jurors to answer as they did, it asked the more narrow question of whether "there is anyone else who either has been the victim of abuse or has had a family member or a close personal friend who has been the victim of abuse." Remarkably, six more prospective jurors responded affirmatively—Jurors F, G, H, I, J, and K—and for one reason or another, none of the four that the trial court spoke to individually about

their experiences ultimately served on the jury.[13]

■ ¶ 24 Prospective Juror G eventually conceded that an episode of abuse that affected her personally would "[p]robably" interfere with her ability to be fair and impartial, but she did not previously respond when the trial court had asked the more general question of whether "because of the nature of the case [she] would be unable to be fair and impartial." In order to get the prospective juror to recognize and admit her potential bias, the court had to ask whether the jurors, their family, or friends had been the victim of sexual abuse, and then ask if that may affect their impartiality. "One of the reasons that a juror may be unaware of his own bias, is that the issue of impartiality is a mixed question of law and fact, the resolution of which necessarily draws upon the *trial court's* legal expertise." *Mu'Min*, 500 U.S. at 442–43, 111 S.Ct. at 1914 (emphasis in original) (internal quotations and citations omitted).[14] Thus, the trial court often must first extract facts from prospective jurors, which would tend to make impartiality more or less likely, and then focus more narrowly on the issue of impartiality as it relates to those facts.

■ ¶ 25 " 'When comments are made which facially question a prospective juror's impartiality or prejudice, an abuse of discretion may occur unless the *challenged* juror is removed by the court or unless the court or counsel investigates and finds the inference rebutted.' " *Woolley*, 810 P.2d at 443 (quoting *State v. Cobb*, 774 P.2d 1123, 1126 (Utah 1989)) (emphasis added). The State argues that this standard should not apply in the

---

13. Jurors G and J had themselves been victims of sexual abuse and were excused for cause. Juror H was dismissed with a peremptory strike, perhaps because his wife had been abused as a child. Juror K was ultimately not needed for this jury and was simply sent home.

14. An astonishing, but insightful, example of a juror's reluctance to admit partiality is given in *Mu'Min*:

When initially queried, the juror admitted to having read about the case but insisted that she was impartial. The following colloquy then ensued:
Q: When you said that you have only read about what [the defendant] has done, what do you mean by that?
A: Well, we all know what she has done. You know, we all know what she has done. So it is now up to the court to see if she is guilty or innocent, but you have to go through the whole trial, you can't just read something in the paper and say that girl is guilty, you know. You understand?
Q: Well, I am not sure. I am not sure what you mean when you say we all know what she has done.
A: Well, we all know the girl went in and held up the bank. . . .
*Mu'Min v. Virginia*, 500 U.S. 415, 443 n. 4, 111 S.Ct. 1899, 1914 n. 4, (1991) (Marshall, J., dissenting) (alteration in original).

instant case because the two jurors were not challenged by counsel.[15] Similarly, Utah Rule of Criminal Procedure 18(e)(14) provides, with our emphasis, that "[n]o person may serve as a juror, *if challenged,* unless the judge is convinced the juror can and will act impartially and fairly." We disagree that the lack of a challenge obviates the problem in this case. *Woolley* and rule 18(e)(14) presuppose that the trial court has fulfilled its duty to detect and investigate the potential for partiality so that counsel has the opportunity to intelligently and effectively exercise challenges to jurors. Clearly, a juror cannot be challenged for cause until there is a basis for the challenge. The trial court's obligation in this regard is essentially independent of counsel's actions. "[T]rial judges [must] take care to adequately and completely probe jurors on all possible issues of bias," *State v. James,* 819 P.2d 781, 798 (Utah 1991), so that the basis for challenges can be discovered.[16] Only with that information on the table is counsel's duty to make appropriate challenges triggered.

¶ 26 For the same reason, while the State is correct that Defendant neither attempted to have the jurors in question removed for cause, nor used a peremptory strike, the rule of *State v. Menzies,* 889 P.2d 393 (Utah 1994), *cert. denied,* 513 U.S. 1115, 115 S.Ct. 910, 130 L.Ed.2d 792 (1995), "a case in which the Utah Supreme Court imposed a requirement for demonstrating prejudice in a related context," *Depew v. Sullivan,* 2003 UT App 152, ¶ 31, 71 P.3d 601, is inapplicable. Because the trial court did not fulfill its obligation to fully probe the jurors about their potential prejudice, "the proceedings did not advance to the point at which, as in *Menzies,* a dispute arose over whether the trial court should have granted a challenge for cause." *Id.* at ¶ 32.

**CONCLUSION**

¶ 27 When there is a specific reason to doubt a prospective juror's impartiality, sound discretion requires the trial court (or counsel, at the court's invitation) to question the juror so the court can meaningfully evaluate whether the juror will act impartially. Such did not occur in this case with respect to two jurors who served, and, accordingly, we reverse Defendant's conviction and remand for a new trial.[17]

¶ 28 WE CONCUR: JUDITH M. BILLINGS, Presiding Judge and NORMAN H. JACKSON, Judge.

---

15. Given our resolution of this case, it is unnecessary to address Defendant's claim of ineffective assistance of counsel.

16. "The purpose for this probing is to facilitate 'both the detection of actual bias and the collection of data to permit informed exercise of the peremptory challenge.'" *Depew v. Sullivan,* 2003 UT App 152, ¶ 12, 71 P.3d 601 (quoting *State v.*

*Taylor,* 664 P.2d 439, 447 (Utah 1983)), *cert. denied,* 77 P.3d 338 (Utah 2003).

17. "In light of our decision to remand for a new trial, it is not necessary to discuss [Defendant's] other alleged errors." *Id.* at ¶ 40 (internal quotations and citation omitted).