2006 UT 3

**STATE of Utah, Plaintiff and Petitioner,**

v.

**Gordon R. KING, Defendant and Respondent.**

No. 20040727.

Supreme Court of Utah.

Jan. 13, 2006.

Mark L. Shurtleff, Att'y Gen., Jeffrey S. Gray, Asst. Att'y Gen., T. Langdon Fisher, Salt Lake City, for plaintiff.

Elizabeth Hunt, Salt Lake City, for defendant.

PARRISH, Justice:

## INTRODUCTION

¶ 1 Defendant Gordon King was convicted of attempted forcible sexual abuse. Despite the fact that he had passed the jury for cause, King appealed, arguing that the trial court erred by failing to individually question two jurors who had indicated that either they or a close friend or family member had been the victim of abuse. The court of appeals reversed King's conviction, holding that the trial court had failed to fulfill its duty of ensuring a fair and impartial jury. The State petitioned for certiorari, arguing that King had failed to preserve the issue of juror bias for appellate review and that King was

unable to establish plain error. We agree and accordingly reverse.

## BACKGROUND

¶ 2 King was charged by information with aggravated sexual abuse of a child, a first degree felony, after his daughter's friend reported that he had inappropriately touched her during a sleepover at his home. King pleaded not guilty, and the case proceeded to a jury trial.

¶ 3 The trial judge began jury selection by asking whether any of the prospective jurors were acquainted with any of the parties or witnesses in the case. The trial judge then read the information to the jury pool and asked whether the nature of the case would cause any of them to believe that "they would be unable to be fair and impartial." Five prospective jurors responded affirmatively. The trial judge asked each of these prospective jurors follow-up questions to determine the extent of any possible biases. After learning that two of the affirmative responses resulted from the fact that either those prospective jurors, their family members, or their close friends had experienced instances of sexual abuse, the judge asked the entire panel whether "there [was] anyone else who either ha[d] been the victim of abuse or ha[d] had a family member or a close personal friend who ha[d] been the victim of abuse." Six additional members of the jury pool raised their hands. The trial judge asked each of them whether that experience "would interfere with [their] ability to be fair and impartial." Only one potential juror responded affirmatively, and she was dismissed for cause.

¶ 4 Despite the assurances from the remaining five prospective jurors that they could be impartial, the trial judge declared that she would like to individually question each of them, as well as the initial five jurors who had indicated an inability to be impartial, to determine the extent of any biases. She instructed the jury pool to exit the courtroom and then called in each individual juror who had affirmatively responded to the inquiries regarding bias or abuse.

¶ 5 The judge first interviewed the five jurors who initially had indicated that they would have some difficulty being fair and impartial due to the nature of the case. The trial judge removed all but one of these five potential jurors for cause, and King removed the remaining juror through use of a peremptory challenge.

¶ 6 The trial judge then began questioning the prospective jurors who had indicated that they, a family member, or a close personal friend had been a victim of abuse. Although the judge individually questioned four of these prospective jurors, she failed—apparently inadvertently—to question the other two. Neither counsel for the defense nor counsel for the prosecution pointed out the omission,[1] and the two jurors who had not been subjected to any follow-up questioning regarding their experience with abuse were ultimately empaneled on the jury.

¶ 7 Before calling the entire jury pool back into the courtroom, the trial judge asked King and the State the following question: "To this point in time, do both sides pass the jury for cause?" Counsel for both parties responded affirmatively. The jury pool then returned to the courtroom, and the prospective jurors discussed their occupations, marital status, and hobbies, among other things. After the prospective jurors provided this information, the trial judge gave counsel for each side the opportunity to ask additional questions. Although King's counsel posed some additional questions, those questions did not address any potential concerns about the two prospective jurors who had admitted some experience with abuse but who had not been individually questioned regarding that experience. Rather, King's counsel asked the jurors whether any of them had experiences with King's employer that would interfere with their ability to act impartially and whether each prospective juror would feel comfortable being judged by jurors with his or her equivalent state of mind.

¶ 8 After counsel for both sides indicated that they had no further questions for the jury pool, the names of eight prospective

---

1. Indeed, defense counsel agreed with the trial judge when she indicated that they had "proba-bly talked to everyone else" who had indicated some kind of experience with sexual abuse.

jurors were called, and the trial judge asked King's counsel if this was the jury that he selected. King's counsel responded, "It is, your Honor." Accordingly, the remaining prospective jurors were excused, and the jury was sworn.

¶ 9 The jury returned a verdict of guilty on the lesser included charge of sexual abuse of a child, a second degree felony. Pursuant to section 76–3–402 of the Utah Code, the trial court reduced King's conviction to attempted sexual abuse of a child, a third degree felony. King timely appealed his conviction to the court of appeals, arguing that the trial court had failed to ensure his right to a fair and impartial jury when it allowed the two jurors who had not been individually questioned to serve on the jury.

¶ 10 The court of appeals reversed King's conviction, holding that "the trial court failed to fully satisfy its responsibility to detect, probe, and eliminate juror bias during the jury selection process." *State v. King*, 2004 UT App 210, ¶ 1, 95 P.3d 282. In so holding, the court of appeals reviewed the trial court's empaneling of the jury for abuse of discretion, *id.* ¶ 10, despite the fact that King had failed to raise any objection to the two jurors during voir dire. The court of appeals declared that our prior case law, which "impose[s] a requirement for demonstrating prejudice" in those instances in which a defendant failed to either object to a juror for cause or use a peremptory strike to remove the juror, was "inapplicable." *Id.* ¶ 26 (citations omitted). It excused King's failure to object, reasoning that King had insufficient information on which to base a challenge for cause "[b]ecause the trial court did not fulfill its obligation to fully probe the jurors about their potential prejudice." *Id.*

¶ 11 The State petitioned for certiorari, which we granted. We have jurisdiction pursuant to Utah Code section 78–2–2(3)(a) (2002).

## ANALYSIS

¶ 12 "On certiorari, we review the court of appeals' decision for correctness, focusing on whether that court correctly reviewed the trial court's decision under the appropriate standard of review." *Hansen v. Eyre*, 2005 UT 29, ¶ 8, 116 P.3d 290 (internal quotation marks omitted). The State contends that the court of appeals' holding is erroneous because it contravenes our prior case law, which applies plain error review in those cases in which the defendant failed to object to a juror for cause during voir dire. The State argues that because King did not object to either juror during voir dire, we cannot review the trial court's actions for abuse of discretion. Rather, we must review its actions for plain error, which requires that King establish actual prejudice. We agree.

¶ 13 We have consistently held that a defendant who fails to preserve an objection at trial will not be able to raise that objection on appeal unless he is able to demonstrate either plain error or exceptional circumstances. *See State v. Cram*, 2002 UT 37, ¶ 9, 46 P.3d 230; *Monson v. Carver*, 928 P.2d 1017, 1022 (Utah 1996). This rule is designed to (1) ensure that the trial court has "an opportunity to address the claimed error, and if appropriate, correct it," and (2) inhibit a defendant from "forego[ing] ... an objection with the strategy of enhancing the defendant's chances of acquittal and then, if that strategy fails, ... claiming on appeal that the [c]ourt should reverse." *Cram*, 2002 UT 37, ¶ 10, 46 P.3d 230 (internal quotation marks omitted). Stated another way, under our preservation rule, " 'defendants are ... not entitled to both the benefit of not objecting at trial and the benefit of objecting on appeal.' " *Id.* ¶ 10 (quoting *State v. Brown*, 948 P.2d 337, 343 (Utah 1997)).

¶ 14 The preservation rule is grounded in our adversarial system of justice, which looks to the parties to zealously advocate their cause before an impartial fact finder. "The rule that points not argued will not be considered is more than just a prudential rule of convenience; its observance, at least in the vast majority of cases, distinguishes our adversary system of justice from the inquisitorial one." *United States v. Burke*, 504 U.S. 229, 246, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992) (Scalia, J., concurring); *see also Brinkerhoff v. Schwendiman*, 790 P.2d 587, 589 (Utah Ct.App.1990) ("It is axiomatic in

our adversary system that a party must raise an objection in an earlier proceeding or waive its right to litigate the issue in subsequent proceedings."); *Polster v. Griff's of Am., Inc.*, 184 Colo. 418, 520 P.2d 745, 747 (1974) ("[T]he trial court . . . should not assume the role of advocate. . . . These are the basic functions of trial counsel in our adversary system of justice and underlie the rationale of the contemporaneous objection rule."); *Reynolds v. City Hosp., Inc.*, 207 W.Va. 101, 529 S.E.2d 341, 350 (2000) ("In the end, the contemporaneous objection requirement serves an important purpose in promoting the balanced and orderly functioning of our adversarial system of justice.").

¶ 15 In this case, the court of appeals refused to apply plain error review, holding that the trial court's "duty to detect and investigate the potential for partiality so that counsel has the opportunity to intelligently and effectively exercise challenges to jurors . . . is essentially independent of counsel's actions." *State v. King*, 2004 UT App 210, ¶ 25, 95 P.3d 282. This holding is tantamount to a declaration that the jury selection process is distinct from the general adversarial system of justice and is therefore exempt from the procedures governing that system. We disagree.

¶ 16 While we acknowledge that the jury selection process has some unique attributes, we do not believe that they warrant its exclusion from the procedural requirements of the adversarial system. To the contrary, it is because of those unique attributes that the jury selection process is as dependent on the procedural safeguards of the adversarial system, if not more so, as the remainder of the trial. Although trial courts have a duty to " 'see that the constitutional right of an accused to an impartial jury is safeguarded,' " *id.* ¶ 15 (quoting *State v. Dixon*, 560 P.2d 318, 319–20 (Utah 1977)), a trial court's lack of familiarity with the specific facts of a case at the beginning of a trial suggests that the selection of an impartial jury depends heavily upon the parties' participation and vigilance in detecting possible biases. *See State v. Moton*, 749 P.2d 639, 642 (Utah 1988) ("The brilliance of the adversarial system is that each side tries to select a jury which is most

favorable to its position. Thus, each side shows its best profile, and justice sees truth full face.").

¶ 17 Moreover, in contrast to the extremely difficult task of ascertaining and remedying any juror bias after a verdict has been rendered, we have repeatedly recognized the ease with which any allegation of juror bias may be investigated and remedied during the jury selection process. *See State v. Saunders*, 1999 UT 59, ¶ 51, 992 P.2d 951 ("[T]he scope of judicial discretion accorded a trial judge must be evaluated in light of the ease with which all issues of bias can be dispensed by the simple expedient of replacing a questionable juror with another whose neutrality is not open to question."). And relying on counsel to raise all possible objections to the jurors before the selection process concludes will allow the trial court to easily and effectively remedy any claim of bias, thereby ensuring the defendant an impartial jury.

¶ 18 In summary, because of counsel's advantaged position and the relative ease with which any claim of bias can be remedied during the selection process, we hold that, just as with the trial process itself, the jury selection process is subject to the procedural safeguards of the adversarial system of justice. We accordingly hold that objections to the trial court's conduct during voir dire are not exempt from the preservation rule.

¶ 19 Before proceeding to apply our holding to the facts presented here, we pause to note that our holding does not negate the trial court's duty to ensure a fair trial. To the contrary, we reemphasize that once a for-cause challenge is raised, a trial court has an obligation to allow counsel to further explore any potential prejudices and to be lenient in granting challenges for cause. *See State v. Baker*, 935 P.2d 503, 509 (Utah 1997) (Stewart, A.C.J., concurring) ("[I]t is absolutely imperative that trial judges once and for all realize that for-cause challenges to jurors should be viewed liberally."). Moreover, even when counsel fails to raise a for-cause challenge to a prospective juror, a trial court may nevertheless have a duty to further investigate or remove the juror sua sponte if he or she has "express[ed] a bias or conflict of interest so strong or unequivocal as to

inevitably taint the trial process." *State v. Litherland,* 2000 UT 76, ¶ 32, 12 P.3d 92.

¶ 20 Having concluded that any challenge to a juror's impartiality is subject to the preservation rule, we now review King's claims. Because King failed to preserve his objection to the jury panel during jury selection by objecting to the jurors for cause, we will reverse only if King is able to demonstrate either that plain error occurred or that exceptional circumstances exist. *See Cram,* 2002 UT 37, ¶ 9, 46 P.3d 230.[2] Because King has failed to allege any exceptional circumstances, we limit our analysis to the issue of plain error.

▌ ¶ 21 To prevail under plain error review, a defendant must demonstrate three elements. First, he must establish that "an error did in fact occur." *State v. Olsen,* 860 P.2d 332, 334 (Utah 1993). Second, he must establish that "the error should have been obvious to the trial court." *Id.* Third, the defendant must establish that the error was harmful, i.e., that there is "a reasonable likelihood" that he would have enjoyed a more favorable outcome absent the error. *State v. Verde,* 770 P.2d 116, 122 (Utah 1989).

▌ ¶ 22 We turn first to a discussion of whether an error occurred. To establish that the trial court erred, the defendant must demonstrate that the trial court abused its discretion, acting " 'beyond the limits of reasonability.' " *Olsen,* 860 P.2d at 334 (quoting *State v. Hamilton,* 827 P.2d 232, 239–40 (Utah 1992)). In this case, the two jurors King now challenges indicated that either they, a family member, or a close personal friend had been a victim of abuse. Relying on our statement in *State v. Wach,* 2001 UT 35, ¶ 29, 24 P.3d 948, where we recognized that "a question of potential bias arises when a prospective juror indicates that he or she has been the victim of a similar crime," King contends that the trial court abused its discretion in failing to further question those

jurors or remove them for cause sua sponte. We reject this argument in light of our discussion of the jury selection process in *Litherland,* 2000 UT 76, 12 P.3d 92. In *Litherland,* we declared:

> It is generally inappropriate for a trial court to interfere with counsel's conscious choices in the jury selection process, notwithstanding the existence of a reasonable basis for objecting to those jurors. Only where a juror expresses a bias or conflict of interest that is so strong or unequivocal as to inevitably taint the trial process should a trial court overrule trial counsel's conscious decision to retain a questionable juror.

*Id.* ¶ 32.

¶ 23 We previously stated that "[w]hen comments are made which facially question a prospective juror's partiality or prejudice, an abuse of discretion may occur unless the challenged juror is removed by the court or unless the court or counsel investigates and finds the inference rebutted." *State v. Cobb,* 774 P.2d 1123, 1126 (Utah 1989). But this statement specifically addresses a situation in which a for-cause challenge has been made during the jury selection process. *See id.* at 1125; *see also Wach,* 2001 UT 35, ¶¶ 18, 27, 24 P.3d 948. Where a facial question of partiality is raised, but counsel does not object to the juror or request additional questioning, the trial court does not abuse its discretion by failing to sua sponte remove the prospective juror for cause unless the juror has expressed a "bias ... so strong or unequivocal as to inevitably taint the trial process." *Litherland,* 2000 UT 76, ¶ 32, 12 P.3d 92.

¶ 24 While the jurors' responses in this case would have been sufficient to support a request by counsel for additional questioning and may have even justified removing the jurors for cause, they were not "so strong or

---

2. Although we recognize that King affirmatively represented to the trial court that he did not have an objection to the two jurors he now challenges on appeal, thereby implicating the invited error doctrine, *see State v. Winfield,* 2006 UT 4, ¶ 21, 128 P.3d 1171; *State v. Lee,* 2006 UT 5, ¶ 20, 128 P.3d 1179, we decline to apply that doctrine in this case because the State failed to raise it in its

brief. *See State v. Casey,* 2003 UT 55, ¶ 39 n. 10, 82 P.3d 1106 (noting that while the invited error doctrine "may preclude application of the plain error analysis," the court will refuse to consider it when "neither party raised this question below or in their briefs or at oral argument"); *see also Winfield,* 2006 UT 4, ¶ 23 n. 6, 128 P.3d 1171.

unequivocal as to inevitably taint the trial process." *Id.* We therefore hold that the trial court did not abuse its discretion in failing to further investigate or remove the jurors sua sponte. Because King has failed to establish the first element necessary to succeed on his claim of plain error, we need not consider the remaining two elements.

¶ 25 King also raises a claim of ineffective assistance of counsel, asserting that his trial counsel was deficient for failing to suggest additional questions or to challenge the jurors during the selection process. Because the court of appeals did not consider this issue in the proceedings below, however, we decline to address it. Instead, we remand this case to the court of appeals so that it may consider King's claim of ineffective assistance of counsel. On remand, the court of appeals should also consider any other issues properly raised but not previously addressed in its original opinion.

## CONCLUSION

¶ 26 We hold that the court of appeals erred in refusing to apply plain error review and in concluding that the trial court failed to protect King's right to a fair and impartial jury. Pursuant to our preservation rule, King must demonstrate plain error on appeal because he failed to raise any objection to the jurors in the trial court. Although the responses of the jurors may have been sufficient to support a request by King that they be removed for cause, they were not sufficient to support a determination that the trial court committed plain error by failing to sua sponte question them further or remove them for cause. Accordingly, we reverse the judgment of the court of appeals and remand the case for consideration of King's ineffective assistance of counsel claim.

¶ 27 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice DURRANT, and Justice NEHRING concur in Justice PARRISH's opinion.