2006 UT App 355

STATE of Utah, Plaintiff and Appellee,

v.

Gordon R. KING, Defendant
and Appellant.

No. 20030069–CA.

Court of Appeals of Utah.

Aug. 31, 2006.

Elizabeth Hunt, Elizabeth Hunt LLC, Salt Lake City, for Appellant.

Mark L. Shurtleff, Attorney General, and Jeffrey S. Gray, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges BILLINGS, McHUGH, and ORME.

OPINION

ORME, Judge:

¶ 1 Gordon R. King appeals his conviction of sexual abuse of a child. *See* Utah Code Ann. § 76–5–404.1 (2003). We previously reversed King's conviction and remanded for a new trial, deciding that the trial court failed in its duty to sufficiently question prospective jurors regarding possible biases. *See State v. King*, 2004 UT App 210, ¶ 27, 95 P.3d 282. The Utah Supreme Court granted certiorari, determined there was no error on the part of the trial court, and remanded the case to us so that we could consider King's claim of ineffective assistance of counsel. *See State v. King*, 2006 UT 3, ¶ 26, 131 P.3d 202. We again reverse King's conviction and remand for a new trial.

## BACKGROUND [1]

¶ 2 During the jury selection phase of this case, the trial judge asked the prospective jurors to indicate whether, considering the nature of the case, "they would be unable to be fair and impartial." Five prospective jurors responded in the affirmative. After asking some follow-up questions of these five prospective jurors, the trial judge decided to ask all the other prospective jurors whether any of them "ha[d] been the victim of abuse or ha[d] had a family member or a close personal friend who ha[d] been the victim of abuse." In response, six additional prospective jurors raised their hands. Although only one of these six prospective jurors initially indicated that the experience would affect her ability to be "fair and impartial," the trial judge decided to individually question each of these six prospective jurors—in addition to the original five prospective jurors who had earlier indicated a possible bias and had not yet been sufficiently questioned—out of the presence of the other prospective jurors.

¶ 3 The judge then proceeded to individually interview all of the first five prospective jurors and four of the latter six prospective jurors. Through some oversight, however, two of the latter six prospective jurors were not questioned further and both served on the jury that convicted King.[2] King now argues that his counsel was ineffective for failing to call this oversight to the trial court's attention.

## ISSUE AND STANDARD OF REVIEW

■ ¶ 4 King raises an ineffective assistance of counsel claim for the first time on appeal. Because King is represented by different counsel on appeal and since the record is sufficient to review King's claim, we may determine for the first time on appeal whether King's trial counsel was ineffective. *See*

*State v. Chacon*, 962 P.2d 48, 50 (Utah 1998). And we evaluate such a claim as a matter of law. *See id.*

## ANALYSIS

¶ 5 To be successful on a claim of ineffective assistance of counsel, a defendant must demonstrate two things: "First, the defendant must show that counsel's performance was deficient.... Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We will address each of these requirements in turn.

### I. Deficient Performance

■ ¶ 6 When determining whether counsel rendered deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689, 104 S.Ct. 2052 (internal quotations and citation omitted). And even if defense counsel approves a prospective juror "who initially appeared biased on voir dire," such approval may, in some circumstances, be a "legitimate trial tactic[ ]" and, thus, not alone sufficient to establish that counsel's performance in not challenging the prospective juror was deficient. *State v. Cosey*, 873 P.2d 1177, 1180 (Utah Ct.App.), *cert. denied*, 883 P.2d 1359 (Utah 1994). *See also State v. Tennyson*, 850 P.2d 461, 469 (Utah Ct.App.1993) (refusing to find counsel's performance deficient when she did not challenge a juror with some degree of bias, the court reasoning that "[f]or all we know, [this juror] was the most attentive juror, or the only one who glanced disparagingly at

1. This is a somewhat abbreviated version of the facts pertinent to King's ineffective assistance of counsel claim. A more detailed recitation of the facts can be found in *State v. King*, 2006 UT 3, ¶¶ 2–11, 131 P.3d 202, and *State v. King*, 2004 UT App 210, ¶¶ 2–8, 95 P.3d 282.

2. Of the prospective jurors who indicated a possible bias and whom the court individually questioned, none ultimately served on the jury. Spe-

cifically, of the original group of five prospective jurors, four were removed for cause and the fifth was removed by King's peremptory strike. And of the four prospective jurors from the latter group of six whom the court individually questioned, two were removed for cause, one was removed by the State's peremptory strike, and one was simply not needed.

the prosecution or sympathetically toward the defendant"). But although it may sometimes be sound trial strategy for counsel to retain a prospective juror who has at some point during voir dire indicated a possible bias, the retention of such a prospective juror necessitates, at a minimum, that counsel make further inquiry into the potential bias to glean some rudimentary facts that would help counsel determine whether such a strategy is in fact sound. In other words, we presume sound trial strategy unless the defendant can make "at least some showing that trial counsel has failed to reasonably participate in the selection of jurors." *Cosey,* 873 P.2d at 1180. *See also Tennyson,* 850 P.2d at 468 (determining counsel's performance was not deficient, in part because counsel was "actively engaged in the [jury] selection process").

¶ 7 With respect to the two overlooked jurors in the instant case, it is evident that trial counsel failed to reasonably participate in the selection process. Six members of the jury pool initially appeared biased when they indicated that either they, a family member, or a close personal friend had been a victim of abuse. Without any articulated reason, the trial judge then proceeded to further question only four of those six prospective jurors, completely overlooking two of them. Counsel here was remiss in not noticing the omission, bringing it to the trial court's attention, and requesting that the court follow through with its original intention to further question all prospective jurors who identified themselves as having a possible bias.[3]

¶ 8 As the Supreme Court previously emphasized in this case, effective defense counsel plays a highly important role in the adversarial process. *See State v. King,* 2006 UT 3, ¶ 16, 131 P.3d 202. Indeed, "a trial court's lack of familiarity with the specific facts of a case at the beginning of a trial suggests that the selection of an impartial jury depends heavily upon the parties' participation and vigilance in detecting possible biases." *Id.* It is also important for counsel

to assist the trial court in ferreting out all bias at this early stage because of "the ease with which any allegation of juror bias may be investigated and remedied during the jury selection process." *Id.* at ¶ 17. Thus, to ensure the selection of an impartial jury, the trial court heavily "rel[ies] on counsel to raise all possible objections to the jurors before the selection process concludes" in order to "allow the trial court to easily and effectively remedy any claim of bias." *Id.* Here, the trial court's reliance upon counsel is especially clear because the trial judge repeatedly asked counsel if there were any other prospective jurors who needed additional questioning regarding potential biases.

¶ 9 Since trial counsel bears the responsibility of actively investigating possible biases that are disclosed during jury selection, there is no conceivable sound trial strategy that would allow the acceptance of potentially biased jurors without at least some further inquiry. *Cf. State v. Templin,* 805 P.2d 182, 188 (Utah 1990) (finding deficient performance when counsel failed to investigate potential defense witnesses, "because a decision not to investigate cannot be considered a tactical decision"). Consequently, simple uninformed acceptance of apparently biased jurors, as happened here, amounts to deficient performance by trial counsel.

## II. Resulting Prejudice

¶ 10 Under the second prong of the test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), King must also show that his counsel's deficient performance was prejudicial. *See id.* at 687, 104 S.Ct. 2052. In most cases, there is "a general requirement that the defendant affirmatively prove prejudice." *Id.* at 693, 104 S.Ct. 2052. *Strickland* instructs, however, that "[i]n certain Sixth Amendment contexts, prejudice is presumed." *Id.* at 692, 104 S.Ct. 2052. We believe the instant case falls within that category because it bears the hallmarks of those

---

3. From the record before us it appears that this failure to question was an inadvertent slip by counsel, and we have no reason to think that counsel's representation was otherwise flawed. But the right to effective assistance of counsel

may be violated "by even an isolated error of counsel if that error is sufficiently egregious and prejudicial." *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

rare situations specifically mentioned in *Strickland* where prejudice may be properly presumed.

¶ 11 Under *Strickland,* we presume prejudice in circumstances where prejudice "is so likely that case-by-case inquiry into prejudice is not worth the cost." *Id. See also Parsons v. Barnes,* 871 P.2d 516, 523 n. 6 (Utah) ("[P]ursuant to our 'inherent supervisory power over the courts,' we may presume prejudice in circumstances where it is 'unnecessary and ill-advised to pursue a case-by-case inquiry to weigh actual prejudice.' ") (quoting *State v. Brown,* 853 P.2d 851, 857, 859 (Utah 1992)), *cert. denied,* 513 U.S. 966, 115 S.Ct. 431, 130 L.Ed.2d 344 (1994). Under the circumstances presented in the instant case, where two prospective jurors were not questioned further about apparent bias but were allowed to serve on the jury that ultimately convicted the defendant, prejudice is extremely likely.[4]

¶ 12 We may also presume prejudice in cases where "it is difficult to measure the precise effect" of counsel's error. *Strickland,* 466 U.S. at 692, 104 S.Ct. 2052. From the post-trial vantage point, it would be nearly impossible for King to prove, or for us to determine, actual prejudice with any degree of accuracy. Based on the initial question the judge asked the prospective jurors, it is not clear whether these two jurors may have been biased because of strikingly similar experiences in their own lives, or whether their experiences were so far removed from the facts of the case that they could have served as unbiased jurors. *See State v. Woolley,* 810 P.2d 440, 443 (Utah Ct.App.) ("Once a juror's impartiality has been put in doubt, a trial judge must investigate by further questions to determine if the juror has merely 'light

impressions' or impressions which are 'strong and deep' and which will affect the juror's impartiality.") (quoting *State v. Julian,* 771 P.2d 1061, 1064 (Utah 1989)), *cert. denied,* 826 P.2d 651 (Utah 1991).

¶ 13 Thus, presuming prejudice rather than requiring King to demonstrate the existence of palpable prejudice is necessary as a practical matter in this case. Because the opportunity was not taken during voir dire to allow the two prospective jurors to reveal rudimentary, yet crucial, information about their possible biases—information that may have prompted counsel to seek to remove the jurors for cause or to exercise peremptory strikes to keep them off the jury—we can only guess what kind of precise effect letting them sit on the jury ultimately had on King's case. And the lack of such information makes it unfair to now require King to show actual prejudice. *Cf. Depew v. Sullivan,* 2003 UT App 152, ¶¶ 32–33, 71 P.3d 601 (refusing to require a showing of "actual prejudice" where no "meaningful opportunity" was provided to potential jurors "to reveal information about possible biases" and where defendant was thus prevented from being able to establish that "any specific juror . . . was 'partial or incompetent' ") (citation omitted), *cert. denied,* 77 P.3d 338 (Utah 2003).[5]

¶ 14 The State argues that the two jurors, by not raising their hands when the trial judge asked certain questions, averred that they could be impartial notwithstanding their experiences and that they would be comfortable being judged by jurors similar to themselves. Such assurances, the State argues, "rehabilitate any potential for bias." But a prospective juror's assurances of impartiality

---

**4.** This determination is buttressed by the fact that of the nine prospective jurors indicating bias who were questioned further in this case, *none* of them served on the jury. And the majority of them—six of the nine—were dismissed for cause, while two more were removed by peremptory strikes. Given this statistical reality, it seems highly unlikely that after further questioning the two overlooked jurors would have both been allowed to sit on the jury—both of them being passed for cause and both of them avoiding peremptory strikes.

**5.** In *Depew v. Sullivan,* 2003 UT App 152, 71 P.3d 601, *cert. denied,* 77 P.3d 338 (Utah 2003), we treated at length the question of whether the "actual prejudice" rule announced in *State v. Menzies,* 889 P.2d 393, 398 (Utah 1994), *cert. denied,* 513 U.S. 1115, 115 S.Ct. 910, 130 L.Ed.2d 792 (1995), applied in the instant context. *Depew,* 2003 UT App 152 at ¶¶ 31–33, 71 P.3d 601. We concluded it did not. *See id.* at ¶¶ 32–33. And, although the State did not argue otherwise in this case, we reiterated that conclusion in our earlier consideration of this appeal. *See State v. King,* 2004 UT App 210, ¶ 26, 95 P.3d 282.

are not alone sufficient to make any apparent bias harmless and to ratify service on the jury. *Cf. West v. Holley,* 2004 UT 97, ¶ 15, 103 P.3d 708 (stating that "a presumption of bias cannot be rebutted solely by a juror's bare assurance of her own impartiality").[6]

¶ 15 Because the circumstances here also "involve impairments of the Sixth Amendment right that are easy to identify," *Strickland,* 466 U.S. at 692, 104 S.Ct. 2052, prejudice may properly be presumed. Indeed, we must presume prejudice any time a prospective juror's response indicates apparent bias and counsel fails to assure that this prospective juror is questioned further and asked basic questions to determine whether actual bias exists.

## CONCLUSION

¶ 16 King has successfully established his claim of ineffective assistance of counsel and has satisfied the *Strickland* test. We conclude that counsel's performance was deficient for failing to alert the trial court that two prospective jurors who had indicated apparent bias were left unquestioned. Under the circumstances of this case we presume that King was prejudiced by counsel's performance because such rudimentary questions were never asked. King is not now required to do the impossible and prove that the two jurors who went unquestioned were actually biased and that the outcome of his trial was the product of this bias. Thus, we may safely say that the result reached below "is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." *Id.* at 696, 104 S.Ct. 2052. Accordingly, we reverse King's conviction and remand for a new trial.

6. The State also argues that the proper way to deal with this claim of ineffective assistance of counsel would be for King to have made a rule 23B motion so that the trial court could enter findings of fact from which we could determine if the jurors were, in fact, biased. *See* Utah R.App. P. 23B(a). Although we deem such facts unnecessary to our decision, we note, along with the Supreme Court, that obtaining reliable answers during such an inquiry would be unsure at best. *See State v. King,* 2006 UT 3, ¶ 17, 131 P.3d 202 (noting it is an "extremely difficult task" to remedy juror bias post-verdict). *Cf. Depew v. Sullivan,* 2003 UT App 152, ¶ 33, 71 P.3d 601

¶ 17 WE CONCUR: JUDITH M. BILLINGS and CAROLYN B. McHUGH, Judges.

("To show the requisite partiality ... of a juror ..., a party must necessarily rely on information elicited at voir dire because voir dire is the only sanctioned opportunity a party has to learn about jurors."), *cert. denied,* 77 P.3d 338 (Utah 2003). We could hardly now ask these jurors, who affirmed that they could remain impartial and who found the defendant guilty, whether their determination in the case was affected by bias. We cannot expect that their answers would be as freely and candidly given as they would have been had they been asked bias-related questions prior to actual service on the jury and the rendering of a guilty verdict.