1999 UT 42

**STATE of Utah, Plaintiff and Appellee,**

**v.**

**Leslie J. CALL, Defendant and Appellant.**

**No. 980047.**

Supreme Court of Utah.

April 30, 1999.

Jan Graham, Att'y Gen., Barnard N. Madsen, Asst. Att'y Gen., Salt Lake City, for plaintiff.

Joan C. Watt, Scott C. Williams, Salt Lake City, for defendant.

HOWE, Chief Justice:

¶ 1 Defendant Leslie J. Call appealed to the Utah Court of Appeals from a district court order revoking his probation and ordering him to serve his sentence of two concurrent prison terms. However, after oral argument, but before rendering a decision, the court of appeals certified it to us pursuant to Utah Code Ann. § 78–2a–3(3) and rule 43 of the Utah Rules of Appellate Procedure.

## BACKGROUND

¶ 2 On November 15, 1991, Call pleaded guilty to one count of burglary and one count of attempted forcible sexual abuse, both third degree felonies. The trial court sentenced him to serve two concurrent terms of zero to five years in prison but then suspended his sentence and placed him on probation for a period of three years. Although the court orally sentenced Call on April 3, 1992, it did not enter the written judgment and sentence until April 8, 1992.[1]

---

1. The parties disagree on the date when Call's probation began. Call asserts that it began on April 3, 1992, the day the court orally sentenced him. The State, however, relies on *State v. Anderson*, 797 P.2d 1114 (Utah Ct.App.1990), to argue that Call's probationary period did not begin until April 8, 1992, the day the court signed and entered the written judgment.

¶ 3   One of the terms of Call's probation required him to enter and complete a sex offender treatment program.   He entered such a program but was unable to complete it by April 1995 when his probation would have initially terminated.   On March 20, 1995, at the request of his probation officer, Call signed a "Waiver of Personal Appearance Before the Court," wherein he waived his right to a hearing and agreed to extend his probation for one more year so that he could complete his treatment program.   *See* Utah Code Ann. § 77–18–1(12)(a)(i).   On April 5, 1995, the Utah State Department of Corrections, Adult Probation and Parole ("AP & P") filed the signed waiver and a progress/violation report with the trial court and formally requested a one-year extension of Call's probation.   The court granted the extension that same day.

¶ 4   Shortly after the extension of Call's probation, AP & P filed a second progress/violation report with the court which alleged that Call had been arrested and charged with residential burglary, criminal mischief, and assault.   These charges arose from an incident in which Call allegedly broke into his ex-girlfriend's home, smashed several pieces of property, and physically assaulted her thirteen-year-old son.   On April 28, 1995, the court revoked Call's probation but then reinstated it for another year with additional conditions.

¶ 5   On March 28, 1996, AP & P filed a third progress/violation report with the court.   Although the report alleged that Call had violated his probation by failing to enter aftercare for the purpose of monitoring his ingestion of antabuse, failing to report to AP & P for one month, resuming to live with his ex-girlfriend, and consuming alcohol, it did not seek a revocation of his probation.   Rather, the report requested a second extension of Call's probation so that he could complete his sex offender treatment program.   In addition to the progress/violation report, AP & P filed a waiver of personal appearance that Call had signed, wherein he again waived his right to a hearing and requested another extension of his probation.   The court granted the request and extended Call's probation for one more year.

¶ 6   In July 1996, AP & P filed a fourth progress/violation report with the court. This report alleged that Call had been arrested and charged with sexual abuse of a child, intoxication, and interfering with an arresting officer.   The victim's father had reported to police that he found Call naked from the waist down and in bed with the two-year-old victim.   In light of these allegations, the court issued a bench warrant and an order to show cause, ordering Call to appear and show why his probation should not be revoked.

¶ 7   While the hearing on the order to show cause was pending, Call moved to dismiss.   He asserted for the first time that the court's "jurisdiction over [his] case terminated on April 3, 1995," two days before AP & P sought to extend it the first time by filing the progress/violation report and signed waiver of personal appearance with the court on April 5, 1995.   He maintained that the court therefore lacked the authority to revoke his probation and that the court should dismiss the pending revocation proceedings.   The trial court denied the motion and ultimately revoked Call's probation on December 11, 1996.   Call now appeals.

¶ 8   Call contends that "[p]ursuant to Utah Code Ann. § 77–18–1 (Supp.1996), felony probation terminates by [operation of] law after 36 months unless the probation period is tolled or the trial court acts to extend probation during the probation period."   He relies on the following subsections, which provide in relevant part:

> (10)(a)(i) Probation may be terminated at any time at the discretion of the court or upon completion without violation of 36 months [of] probation. . . .
>
>   . . . .
>
> (11)(b) The running of the probation period is tolled upon the filing of a violation report with the court alleging a violation of the terms and conditions of probation or upon the issuance of an order to show cause or warrant by the court.

Utah Code Ann. § 77–18–1(10)(a)(i) & (11)(b).   Call argues that since AP & P failed to file the progress/violation report or otherwise initiate the extension proceedings prior

to April 3, 1995, his probation period was not tolled, but terminated as a matter of law. He also contends that he did not "knowingly, intelligently and voluntarily waive his right to a hearing on the issue of whether [his] probation should be extended." He thus concludes that even if AP & P had filed the waiver and progress/violation report before his probation terminated, the waiver was nevertheless ineffective in extending his probation. We will consider these two contentions in order.

## ANALYSIS

¶ 9    Over the past eleven years, we have had occasion to decide two significant cases dealing with the termination of probation. In the first case, *State v. Green*, 757 P.2d 462 (Utah 1988), we held that the trial court did not have authority to revoke a defendant's probation after the probationary period had expired by operation of law pursuant to section 77–18–1(10)(a), which at that time provided for automatic termination of probation after eighteen months with no probation violation. In that case, after the eighteen-month probationary period had expired, a probation officer discovered that the defendant was being charged with committing three offenses during the eighteen-month statutory term of his probation. The officer filed an affidavit of probation violation with the trial court, and after a hearing, the court ordered the defendant to serve a prison term for his original conviction. We reversed the order sending him to prison and pointed out the indefiniteness the trial court's ruling created:

> Defendants would be left in a perpetual state of limbo; although their probation would appear to have been terminated, usually by entry of an order to that effect, defendants would actually be subject to a continued term of fictional supervision . . . . Decades could pass and then, based upon the discovery of a probation violation which had occurred during the statutory period, a court could revoke a term of probation thought to have been terminated long ago.

*Id.* at 464.

¶ 10    Two years later, in *Smith v. Cook*, 803 P.2d 788 (Utah 1990), the defendant was on probation for a three-year period, starting on July 10, 1981, and ending July 9, 1984. Three months prior to the completion of his probation, the defendant was again arrested and charged with a crime. On May 15, 1984, an incident report and affidavit to show cause why his 1981 probation should not be revoked or modified was filed in the district court. Five months later, in December 1984, the court revoked his probation and ordered him to serve his sentence. We reversed the revocation, holding that in order for a trial court to retain its authority over the probationer beyond the period of probation, the probationer must be served with an order to show cause within the probationary period. *See Smith*, 803 P.2d at 796.

¶ 11    These cases instruct that if it is the intent of the State to extend the probationary period beyond its original term, the State must take definitive action to extend the term before the expiration date, and the probationer must be given notice of that intent. Otherwise, the probationer is left in a state of uncertainty, not knowing whether to continue to observe the terms of his probation. In the instant case, a probation officer approached Call well in advance of the termination date and requested that he agree to a one-year extension of his probation so that he could complete the sex offender treatment program in which he was enrolled, thus fulfilling one of the terms of his probation. On March 20, 1995, Call signed a waiver of personal appearance, wherein he waived his right to a hearing and agreed to an extension of his probation for one more year. This action confirmed that Call received actual notice that his term of probation would not expire at the conclusion of the statutory 36-month period. Thus Call's probation was properly extended under section 77–18–1(12)(a)(i), which provides: "Probation may not be modified or extended except upon waiver of a hearing by the probationer *or* upon a hearing and a finding in court that the probationer has violated the conditions of probation." (Emphasis added.)

¶ 12    We conclude that Call acted to extend his probation for one year well in advance of the expiration of the original term

and left him with no doubt that he remained obligated to the terms of his probation for another year. See *State v. Martin,* 976 P.2d 1224 (Utah Ct.App.1999) (holding that under section 77–18–1(12)(a)(i), probation may be extended in either of two ways provided for in that subsection). Since Call signed the written waiver well before both April 3, 1995, and April 8, 1995, it is immaterial for the purposes of this case on which of those two dates his original term of probation would have expired.

¶ 13 Call also contends that he did not "knowingly, intelligently and voluntarily waive his right to counsel, notice and a hearing on the extension issue." He has admitted, however, that he signed the waiver and that he was competent and able to read the words on the form before he signed it. Call did not testify at the hearing on his motion to dismiss the order to show cause why his probation should be revoked. The record on this issue consists solely of the uncontradicted testimony of his probation officer and the written waiver.

¶ 14 The probation officer testified that on March 20, 1995, he met with Call and discussed the probation conditions Call had not met and the possibility of an extension. Call did not object to extending his probation and did not ask for an attorney before making that decision. He read the waiver form and asked no questions before he signed it. The form stated that Call was willing to accept the extension of his probation without a hearing and acknowledged his right to be present at a hearing and to be represented by counsel. In *State v. Byington,* 936 P.2d 1112, 1116 (Utah Ct.App.1997), the court held that a probationer in a probation revocation hearing can waive the right to counsel "as long as the record as a whole reflects the probationer's reasonable understanding of the proceedings and awareness of the right to counsel." Under that standard, the written waiver corroborated by both the probation officer's testimony and Call's admission established that Call had a reasonable understanding of the proceedings and an awareness of his right to counsel. In denying Call's motion to dismiss, the trial court determined that Call knew what he was signing,

was competent, and understood and could read the document that he signed. The trial court did not err in this regard.

¶ 15 We conclude that the record fully supports that Call knowingly, intelligently, and voluntarily waived his right to a hearing on the issue of whether his probation should be extended. This conclusion is bolstered by the fact that one year later, in March 1996, Call again executed a "Waiver of Personal Appearance Before the Court" and requested another extension of his probation.

¶ 16 Order affirmed.

¶ 17 Associate Chief Justice DURHAM, Justice STEWART, Justice ZIMMERMAN, and Justice RUSSON concur in Chief Justice HOWE'S opinion.

