*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2013 UT 55**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Plaintiff and Appellee,*
*v.*
DAMIEN A. CANDLAND,
*Defendant and Appellant.*

No. 20110738
Filed August 16, 2013

Fourth District, Provo Dep't
The Honorable James R. Taylor
No. 101400651

Attorneys:

John E. Swallow, Att'y Gen., Kris C. Leonard, Asst. Att'y Gen.,
for appellee

Aaron P. Dodd, Provo, for appellant

JUSTICE DURHAM authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE PARRISH, and JUSTICE LEE joined.

JUSTICE DURHAM, opinion of the Court:

## INTRODUCTION

¶1 Mr. Candland pled guilty to aggravated murder and now appeals his conviction and sentence. We hold that Mr. Candland received constitutionally adequate notice of the nature of the charge and of his limited appeal rights. We also hold that the district court did not abuse its discretion in determining that Mr. Candland entered his plea knowingly and voluntarily. We therefore affirm his conviction and sentence.

## BACKGROUND

¶2 Mr. Candland pled guilty to aggravated murder and aggravated assault based on two unrelated incidents. His plea affidavit describes the factual basis for the aggravated murder charge as follows:

> On February 21, 2010, the defendant, Damien Candland, and his aunt . . . got into an altercation at the home in

Provo they shared. During the altercation, the defendant physically assaulted [his aunt], causing multiple bodily injuries. Defendant then bound the victim's hands behind her back with duct tape and [brutally murdered her]. . . .

[Defendant's aunt] had been a witness against the defendant in 4th District Court case # 091401272, in which the defendant was charged with and convicted of stealing from her. [The aunt] was also a witness in 4th District Court case # 091403173, in which the defendant was charged with aggravated assault with a deadly weapon. Defendant killed her in part in retaliation for testifying, providing evidence, or participating in the legal proceedings against him in those matters, as well as to prevent her from testifying against him in the assault committed just before he killed her.

The plea affidavit also describes the elements of the crime of aggravated murder as follows:

Intentionally or knowingly;

Caused the death of another;

And the homicide was committed for the purpose of retaliating against a person for testifying, providing evidence, or participating in any proceedings or official investigation ([Utah Code section] 76-5-202(1)(k)(iii)).

Mr. Candland initialed the affidavit next to these statements of the factual basis for the charge and the elements of the crime. He also initialed to acknowledge that by pleading guilty he was "giving up [his] right to appeal [his] conviction."

¶3    The aggravated assault charge, which is not at issue in this appeal, was based on evidence that Mr. Candland attacked a different victim while the victim was riding a bicycle. Mr. Candland allegedly threw the victim to the ground, pinned him down, and punched him in the face, breaking his jaw and eye socket.

¶4    Mr. Candland pled guilty to both charges at a hearing on January 20, 2011. In the colloquy preceding the entry of the pleas, the district court explained that Mr. Candland was waiving his rights to a presumption of innocence, to a speedy jury trial, to confront and cross-examine witnesses against him, to summon witnesses, and not to incriminate himself. The court confirmed that Mr. Candland had read the plea affidavit and discussed it with his attorney. The court

then explained the elements of the two charges. Regarding the aggravated murder charge, the court explained that the state would have to prove beyond a reasonable doubt that Mr. Candland "intentionally or knowingly caused the death of another person . . . in order to prevent a witness from testifying, to prevent a person from participating in legal proceedings or an investigation, or to retaliate for their participation by providing evidence or information in a proceeding."

¶5    The prosecutor then explained the factual basis for each charge, which mirrored the statement from the plea affidavit. *See supra* ¶ 2. The court then said to Mr. Candland, "Those facts are sufficient to establish the charge against you. Now, my conclusion on that point is something that you would not be able to appeal; do you understand that, sir?" Mr. Candland responded in the affirmative.

¶6    The district court then posed several more questions to Mr. Candland, including, "Are you pleading guilty because you did these things?" When Mr. Candland did not immediately reply, the court suggested he confer with his attorney. After a brief discussion off the record, Mr. Candland's attorney explained to the judge that Mr. Candland admitted to punching the cyclist victim but not to holding him down and punching him repeatedly, as the prosecutor alleged. The court then rephrased the question he had posed to Mr. Candland, asking if he understood that he was admitting to having "caused the death of another person, under the circumstances that were described," and to having "physically harmed another person, causing the injuries that were described." When Mr. Candland again did not immediately respond, the court asked, "Is that what happened?" Mr. Candland responded, "Yeah."

¶7    Finally, the court explained that in order to withdraw the guilty pleas, Mr. Candland would have to show that at the hearing he was "in some way confused." The court asked Mr. Candland, "Are you confused in any way this morning?" Mr. Candland replied, "No." The court then accepted both guilty pleas.

¶8    The day after the hearing, on January 21, Mr. Candland submitted a handwritten letter to the district court, stating that he was confused when he entered his plea and requesting permission to withdraw his plea. On January 26 and February 7, Mr. Candland sent the court two more handwritten letters with the same message. On February 15, the district court appointed new counsel for Mr. Candland, with whose assistance Mr. Candland filed a motion to withdraw his plea. The court held oral arguments, at the

conclusion of which it denied the motion, holding that "Mr. Candland was adequately informed, [and] was not confused." Mr. Candland appealed. We have jurisdiction under Utah Code section 78A-3-102(3)(i).

**STANDARD OF REVIEW**

¶9 The question of whether a guilty plea is knowingly and voluntarily entered has both factual and constitutional dimensions. As to the subjective inquiry of whether a defendant understood the factual and legal basis for the plea and made an informed decision to waive the implicated constitutional rights, we owe deference to the district court. The defendant's subjective understanding is a factual question that the district court is in a better position to determine than we are because during the plea hearing and any subsequent hearings, the court can "assess not only the verbal content of the defendant's responses, but also the entire spectrum of verbal and nonverbal behavior that comprises his presence before the judge." *State v. Beckstead*, 2006 UT 42, ¶ 10, 140 P.3d 1288.

¶10 As to the constitutional inquiry, we review for correctness whether the plea hearing and documents incorporated into the plea hearing record meet the minimum due process requirements of providing the defendant notice of the nature of the charges, the constitutional rights being waived, and the likely consequences of the guilty plea. *See id.* ¶ 8 (stating that the district court's compliance with the constitutional requirements for accepting guilty pleas is a question of law, reviewed for correctness).

**ANALYSIS**

¶11 To be valid, a guilty plea must be entered knowingly and voluntarily. This standard requires that defendants receive constitutionally adequate notice of the nature of the charges, the constitutional rights being waived, and the likely consequences of the plea. It also requires that defendants subjectively understand this information and enter the guilty plea of their own free choice.

**I. A GUILTY PLEA MAY BE WITHDRAWN IF IT IS NOT "KNOWINGLY AND VOLUNTARILY MADE"**

¶12 The withdrawal of guilty pleas is governed by Utah Code section 77-13-6(2), which provides that a defendant may withdraw a guilty plea if it "was not knowingly and voluntarily made." The phrase "knowingly and voluntarily" is informed by federal due process standards. *State v. Alexander*, 2012 UT 27, ¶ 16, 279 P.3d 371.

¶13 Under U.S. Supreme Court precedent, a guilty plea that is

not "voluntary and knowing . . . has been obtained in violation of due process and is therefore void." *McCarthy v. United States*, 394 U.S. 459, 466 (1969). For a plea to be voluntary and knowing, the defendant must have knowledge of the nature of the charges, of the constitutional rights being waived, and of the likely consequences of entering the guilty plea. *Bradshaw v. Stumpf*, 545 U.S. 175, 182–83 (2005) (holding that for a plea to be valid, a defendant must be "aware of the nature of the charges against him, including the elements of the . . . charge to which he plead[s] guilty"); *Brady v. United States*, 397 U.S. 742, 748 (1970) (holding that defendants who plead guilty must have "sufficient awareness of the relevant circumstances and likely consequences"); *Boykin v. Alabama*, 395 U.S. 238, 243 (1969) (holding that the record must show that the defendant who pled guilty was informed of "the privilege against compulsory self-incrimination," "the right to trial by jury," and "the right to confront one's accusers"). The plea must also be the result of the defendant's "voluntary and intelligent choice," not the result of improper threats or coercion. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (internal quotation marks omitted).

¶14 It is the responsibility of the district court to ensure that defendants enter pleas knowingly and voluntarily. *Boykin*, 395 U.S. at 243–44 ("What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence."). To aid district courts, we created rule 11 of the Utah Rules of Criminal Procedure, which provides a roadmap for ensuring that defendants receive adequate notice of their rights and for examining defendants' subjective understanding and intent. *See Alexander*, 2012 UT 27, ¶ 17. Although district courts are not constitutionally obligated to follow rule 11, we strongly encourage them to do so to ensure that they address each due process requirement and create a record of their inquiry. *See id.* ¶¶ 17, 24.

¶15 When district judges follow rule 11, they provide more procedural protections to defendants than are required by the federal due process clause. Thus, if an appellate court determines that the district court has fully complied with rule 11, many constitutional challenges to the entry of a guilty plea are foreclosed. *Id.* ¶ 24. However, if the district court has failed to comply with rule 11, the appellate court must consider whether the notice to the defendant complied with federal due process requirements when a federal constitutional challenge is raised. *See supra* ¶ 13. In reviewing the notice provided to the defendant, appellate courts may consider

the plea hearing transcript and any document incorporated into the plea hearing record through the defendant's oral acknowledgment at the hearing of having read and understood the contents of the document.[1] *See Alexander*, 2012 UT 27, ¶ 31; UTAH R. CRIM. P. 11(e).

¶16    Appellate courts must also determine whether the district court abused its discretion in finding that the defendant actually entered the plea knowingly and voluntarily; that is, whether the defendant actually understood the charges, the constitutional rights, and the likely consequences of the plea and voluntarily chose to plead guilty. This appellate review is based on the transcripts of the plea hearing and any evidentiary hearing on the motion to withdraw the plea, as well as the circumstances surrounding the case. *See, e.g., State v. Corwell*, 2005 UT 28, ¶ 19, 114 P.3d 569 (concluding that the defendant was actually aware of her speedy trial right after the judge warned her she would be giving up her "trial next Monday").

## II. MR. CANDLAND'S PLEA WAS "KNOWINGLY AND VOLUNTARILY MADE"

¶17    Mr. Candland argues on appeal that his plea was not "knowingly and voluntarily made" for two reasons: (1) he did not understand the relation of the facts to the law and (2) he was misinformed and confused about his right to appeal.

### A. The Relation of the Facts to the Law

¶18    Mr. Candland first asserts that he did not understand how the facts related to the elements of the crime of aggravated murder. He does not seem to dispute that his notice of the charges and their factual bases were constitutionally adequate. Indeed, it would be nearly impossible to make such an argument because both the plea colloquy and the plea agreement, which was incorporated into the plea hearing record,[2] clearly set forth the charges and the alleged conduct by Mr. Candland that corresponded with the elements of the charges, in compliance with rule 11. *See supra* ¶¶ 2–5. Rather, Mr. Candland alleges that his subjective understanding of the facts and the law was inadequate.

¶19    Mr. Candland supports his argument by pointing to his

---

[1]  If the defendant cannot read or does not understand English, it is sufficient if counsel or another individual has read the document to or translated it for the defendant. *See* UTAH R. CRIM. P. 11(e).

[2]  Mr. Candland stated during the plea colloquy that he had read the plea affidavit, had discussed it with his attorney, and had understood it.

silence following the court's question, "Are you pleading guilty because you did these things?" Mr. Candland contends that his failure to immediately respond demonstrates that he was confused. However, in context, the transcript shows that Mr. Candland was confused only about the aggravated assault charge, not about the aggravated murder charge.

¶20    When Mr. Candland did not immediately respond to the court's question, the court suggested that defense counsel confer with Mr. Candland. Following a brief discussion off the record, defense counsel explained that Mr. Candland was uncomfortable with the prosecutor's description of the assault. Although he admitted to punching the victim, he did not admit to holding him down and punching him repeatedly. Thus, Mr. Candland's hesitancy was entirely unrelated to the aggravated murder case, and the district court did not abuse its discretion in determining that Mr. Candland knowingly and voluntarily entered a guilty plea to the aggravated murder charge.

### B. Appeal Rights

¶21    Mr. Candland further asserts that the district court misinformed him regarding his right to appeal. On this issue, Mr. Candland seems to assert both that the notice of his appeal rights was constitutionally defective and that he was actually confused.

¶22    Because this issue was not preserved, Mr. Candland asks us to review it for plain error. "To prevail under plain error review, a defendant must demonstrate three elements. First, he must establish that an error did in fact occur. Second, he must establish that the error should have been obvious to the trial court. Third, the defendant must establish that the error was harmful . . . ." *State v. King*, 2006 UT 3, ¶ 21, 131 P.3d 202 (citations omitted) (internal quotation marks omitted). Because Mr. Candland's argument falters on the first requirement—that an error did in fact occur—we do not reach the second and third requirements.

¶23    We conclude that Mr. Candland received constitutionally adequate notice of the appeal rights he waived by entering a guilty plea. The plea affidavit explained that Mr. Candland was waiving his state constitutional right to appeal his conviction:

> If I chose to go to trial and if I am convicted, I know the Constitution of Utah provides that I would have the right to appeal my conviction and/or sentence. If I could not afford the costs of an appeal, the State would

> pay those costs for me. I understand that I am giving up
> my right to appeal my conviction if I plead guilty.

This statement in the plea affidavit complies with rule 11's requirement that defendants be "advised that the right of appeal is limited." UTAH R. CRIM. P. 11(e)(8). Thus, Mr. Candland's due process right to notice of the repercussions that his guilty plea would have on his right to appeal was sufficiently protected.

¶24    Mr. Candland also contends that his plea was not knowingly and voluntarily made because he was confused by the following statement by the district court: "Those facts are sufficient to establish the charge against you. Now, my conclusion on that point is something that you would not be able to appeal; do you understand that, sir?" Although this statement is less complete than the statement in the plea affidavit, it was not misleading. Defendants who knowingly and voluntarily enter a plea agreement that waives the right to appeal cannot appeal their conviction based on the sufficiency of the factual allegations. *Manning v. State*, 2005 UT 61, ¶ 36, 122 P.3d 628 (recognizing that an appeal from a "knowing and voluntary guilty plea pursuant to a plea agreement that expressly waives the right to appeal . . . may only be undertaken following a timely motion for withdrawal of the guilty plea"(citation omitted)). The court's statement was not erroneous and does not support Mr. Candland's argument that he was confused. Thus, the district court did not abuse its discretion in making the subjective determination that Mr. Candland knowingly and voluntarily entered his plea.

¶25    Because Mr. Candland received notice that he was waiving his appeal rights in compliance with rule 11 and because the district court did not stray beyond the bounds of its discretion in finding that Mr. Candland knowingly and voluntarily waived those rights, there is no error for us to review under the plain error framework.

## CONCLUSION

¶26    The district court complied with rule 11 in ensuring that Mr. Candland had been informed of the nature of the charges and the limitations on his appellate rights. Therefore, this notice was constitutionally adequate. The district court also reasonably concluded that Mr. Candland entered his guilty plea knowingly and voluntarily. We affirm the conviction and sentence.