2016 UT App 19

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
TIMOTHY PACHECO,
Appellant.

Memorandum Decision
No. 20140537-CA
Filed January 28, 2016

Third District Court, Salt Lake Department
The Honorable Robin W. Reese
No. 111908850

David M. Corbett and Craig L. Pankratz, Attorneys
for Appellant

Sean D. Reyes and John J. Nielsen, Attorneys
for Appellee

JUDGE STEPHEN L. ROTH authored this Memorandum Decision, in which JUDGE J. FREDERIC VOROS JR. and SENIOR JUDGE RUSSELL W. BENCH concurred.[1]

ROTH, Judge:

¶1     Timothy Pacheco appeals the revocation of his probation and the imposition of prison sentences for burglary, a second degree felony, and aggravated assault, a third degree felony. Pacheco argues the district court failed to adequately determine that his admissions to the alleged probation violations were knowing and voluntary. We affirm.

---

1. Senior Judge Russell W. Bench sat by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

¶2    "In reviewing a revocation of probation, we recite the facts in the 'light most favorable to the trial court's findings.'" *State v. Legg*, 2014 UT App 80, ¶ 2, 324 P.3d 656 (quoting *State v. Jameson*, 800 P.2d 798, 804 (Utah 1990)). On the evening of November 19, 2011, Pacheco broke a glass window in his ex-wife's house and entered the house despite an active protective order served on him nearly two months before. Upon hearing the window break, Pacheco's ex-wife took one of her children and fled to a neighbor's house to call the police. After entering the house, Pacheco went to the bedroom of his ex-wife's sixteen-year-old daughter and asked her where her mother was. When the daughter stated that she did not know, Pacheco physically assaulted her. The daughter escaped. By this time, the neighbor (Neighbor) was headed to the house of Pacheco's ex-wife to check on the other children. Before arriving at the house, Neighbor saw the sixteen-year-old daughter running toward him, closely followed by Pacheco. Neighbor told Pacheco his ex-wife had contacted the police, who were on their way. Pacheco then fled the scene. Neighbor cooperated with law enforcement in the ensuing criminal proceedings.[2]

¶3    Pacheco was charged with attempted murder and aggravated burglary, both first degree felonies, along with six counts of commission of domestic violence in the presence of a child and violation of a protective order, all third degree felonies. Prior to trial, the State "became aware that the alleged victims were no longer cooperative and received information that [Pacheco] may have tampered with [them]." The State then filed witness-tampering charges against Pacheco in a separate case. Pacheco eventually pleaded guilty to burglary and

---

2. At Pacheco's Order to Show Cause hearing, the State characterized Neighbor as "[t]he only person that was cooperative [as a witness] . . . other than the law enforcement officers who responded [to the 911 call]."

aggravated assault in exchange for the State's dismissal of all other charges and a favorable sentencing recommendation, which included suspension of prison sentences, credit for time served in jail awaiting trial, and probation. The district court accepted Pacheco's plea and followed the State's sentencing recommendation, suspending consecutive prison terms, with credit for time served, and imposing three years' supervised probation.

¶4    While on probation, Pacheco saw Neighbor at a gas station. Pacheco approached Neighbor and "threaten[ed] him," stating, "It's coming" and "You're dead." Pacheco also "push[ed] and shov[ed] [Neighbor] . . . in an attempt to get a reaction." Police were called to the gas station, but Pacheco fled the scene before they arrived. Based on this incident, Adult Probation & Parole (AP&P) filed a progress/violation report alleging, among other things, that Pacheco had violated the terms of his probation by assaulting Neighbor and by "fail[ing] to be cooperative, compliant and truthful in all dealings" with his probation officer when he neglected to inform his probation officer of the incident. AP&P concluded that Pacheco "does not deserve the privilege of probation" and recommended revocation of his probation and "a lengthy period of incarceration."

¶5    The district court issued an order to show cause (OSC) why Pacheco's probation should not be revoked, and through counsel Pacheco denied the OSC's allegations and requested an evidentiary hearing. At the hearing, Pacheco's counsel advised the court that Pacheco had reached an agreement with the State and that instead of proceeding with the evidentiary hearing, Pacheco was prepared to admit to the assault on Neighbor and failure to report the incident to his probation officer in exchange for the State's agreement not to prosecute him for any crimes related to the assault. Before accepting Pacheco's admissions, the district court conducted the following colloquy:

THE COURT: And so Mr. Pacheco, are you willing to admit that you weren't truthful or compliant with your probation officer?

[PACHECO'S COUNSEL]: May I advise my client on that, your Honor? Your Honor, actually in speaking with Mr. Pacheco, he would admit Allegations 2 [the assault] and 4 [the failure to report it], since four is tied to No. 2.

THE COURT: Okay.

[PACHECO'S COUNSEL]: And, you know, we can certainly offer reasons for that if the Court is willing to hear those momentarily.

THE COURT: Uh-huh. So there are two allegations you are willing to admit, Mr. Pacheco. Is that true?

[PACHECO]: Yes.

. . . .

THE COURT: So, Mr. Pacheco, you would admit Allegation No. 2, that you committed the offense of assault on or about December the 7th of 2013, and No. 4, that you failed to be cooperative, compliant and truthful in all dealings with your probation officer. You are willing to admit those two things?

[PACHECO]: Yes.

. . . .

THE COURT: You are making the admissions voluntarily?

[PACHECO]: Yeah.

THE COURT: And you understand that you have a right to a hearing?

[PACHECO]: Yeah.

THE COURT: And in fact, that hearing . . . could go forward today. Do you understand that?

[PACHECO]: Yeah.

THE COURT: And if you admit these allegations, you are giving up the right to have that hearing. Do you understand that?

[PACHECO]: Yes.

THE COURT: Okay. . . . [A]nd are you doing all of this voluntarily?

[PACHECO]: Yes, sir.

THE COURT: Okay. I'll find that Mr. Pacheco has willfully violated his probation, . . . at least in terms of Allegations 2 and 4, and strike the other allegations and just note that the recommendation for AP&P is that Mr. Pacheco['s] . . . probation be revoked and he be committed to prison. Is that AP&P's recommendation still?

PROBATION OFFICER: It is, your Honor.

THE COURT: Okay.

Having found that Pacheco "willfully violated his probation," the district court revoked his probation and imposed the original prison sentences, ordering them to run concurrently rather than consecutively.

¶6     Pacheco now appeals, arguing that the district court did not adequately determine whether his waiver of an evidentiary hearing was knowing and voluntary before accepting his admissions and revoking his probation. Because Pacheco did not preserve this issue below, he seeks review under the plain error doctrine.

> In general, to establish the existence of plain error and to obtain appellate relief from an alleged error that was not properly objected to, the appellant must show the following: (i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful . . . . If any one of these requirements is not met, plain error is not established.

*State v. Dunn*, 850 P.2d 1201, 1208–09 (Utah 1993) (footnote and citations omitted); *accord State v. King*, 2006 UT 3, ¶ 21, 131 P.3d 202. "To establish that the error should have been obvious to the trial court, [the defendant] must show that the law governing the error was clear at the time the alleged error was made." *State v. Dean*, 2004 UT 63, ¶ 16, 95 P.3d 276; *see also State v. Alzaga*, 2015 UT App 133, ¶ 23, 352 P.3d 107. And "Utah courts have repeatedly held that a trial court's error is not plain where there is no settled appellate law to guide the trial court." *State v. Ross*, 951 P.2d 236, 239 (Utah Ct. App. 1997). Pacheco has not demonstrated that the district court committed plain error.

¶7     We first consider whether Pacheco has demonstrated that the district court failed to adequately ensure he understood his right to an evidentiary hearing prior to revoking his probation. Pacheco contends that his waiver was neither knowing nor voluntary because the district court's colloquy failed to establish that he understood the consequences of his agreement to admit probation violations and to forgo an evidentiary hearing. We disagree.

¶8     Pacheco states that the district court "only asked him whether he was willing to make the admissions, whether he understood that he had the right to a hearing, and whether he entered the admissions voluntarily." He contends that the court's colloquy failed to "demonstrate that he was fully aware of his rights and the consequences of his waiver and admissions," because "[t]he court only queried whether he understood a portion of his rights" but did not provide him with sufficient information to determine whether or not he should forgo the evidentiary hearing that had been scheduled for that very day. Specifically, Pacheco argues that the district court did not inform him the State "had the burden to prove the truth of its allegations by a preponderance of the evidence"; or that he "had the right to the assistance of counsel at the hearing"; "to cross-examine witnesses"; "to call witnesses on his own behalf"; "to present evidence relevant to . . . both the alleg[ed] violations and mitigation"; and, further, that the court failed to ascertain whether he "knew the consequences and sentencing options available to the judge as a result of his admissions."

¶9     But in arguing that the district court failed to adequately advise him of his rights in this case, Pacheco acknowledges "there is no rule mandating the form of a colloquy during a probation revocation hearing." Essentially, Pacheco urges this court to conclude that a waiver of a hearing prior to revoking probation is "knowing" only if the district court describes in detail each and every aspect of the evidentiary hearing process and the range of potential sentencing consequences. We conclude that Pacheco has not shouldered his burden of showing that the district court plainly erred in accepting his admissions and revoking his probation. *See State v. Kerr*, 2010 UT App 50, ¶ 7, 228 P.3d 1255 (concluding that "[the defendant's] plain error claim fails because he cannot demonstrate that any error in sentencing should have been obvious to the trial court").

¶10    The level of awareness sufficient to knowingly waive a right depends on the circumstances. A guilty plea, for instance, "is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). Thus, in order to ensure that a defendant is knowingly and voluntarily pleading guilty to a crime, the court must advise the defendant in some detail of the rights he will be forgoing. *See, e.g.*, *State v. Candland*, 2013 UT 55, ¶ 11, 309 P.3d 230 (requiring that "defendants receive constitutionally adequate notice of the nature of the charges, the constitutional rights being waived, and the likely consequences of the plea" in order for the plea to be both knowing and voluntary). In this regard, "rule 11 of the Utah Rules of Criminal Procedure . . . provides a roadmap" to assist the district court in "ensuring that defendants receive adequate notice of their rights . . . ." *Id.* ¶ 14; *see also* Utah R. Crim. P. 11(e); *State v. Beckstead*, 2006 UT 42, ¶ 10, 140 P.3d 1288 (noting that rule 11 has a "detailed inventory of rights" and that "a sentencing judge must communicate to a defendant the full complement of information" found in the rule). But even in the context of a guilty plea, strict adherence to rule 11 guidelines is not required, so long as constitutional requirements are otherwise met. *See Candland*, 2013 UT 55, ¶ 14 ("Although district courts are not constitutionally obligated to follow rule 11, we strongly encourage them to do so to ensure that they address each due process requirement and create a record of their inquiry.").

¶11    "[A] probation revocation proceeding," on the other hand, "involves an individual who has already pled guilty to a crime or been found guilty beyond a reasonable doubt" and "has subsequently entered into a probation agreement that is essentially a contract with the court: the court agrees to stay part or all of the statutory sentence, and the probationer in turn agrees to perform or abstain from performing certain acts." *State v. Hodges*, 798 P.2d 270, 278 (Utah Ct. App. 1990). While Pacheco

acknowledges that "the colloquy associated with the waiver of rights in probation violation proceedings may be something less than the colloquy required for criminal pleas," he nevertheless contends that "the colloquy must be something greater than [he] received." But he does not provide any authority establishing that the colloquy for the waiver of a probation revocation evidentiary hearing and the entry of admissions must be more detailed than what occurred in his case. And there does not appear to be any.

¶12　For example, while there is no dispute that waivers of rights must meet the general standard that they be knowing and voluntary, there is no rule 11 equivalent to guide the district court in ensuring that a defendant's waiver of an evidentiary hearing and entry of an admission to probation violations is appropriate. Indeed, we are aware of no Utah case that requires the level of detail Pacheco asks this court to require from a district court who is asked to accept admissions of a probation violation. Rather, Utah cases addressing probation revocation suggest that mere knowledge of the right to a hearing may suffice. For example, in *State v. Call*, 1999 UT 42, 980 P.2d 201, the defendant appealed a district court order revoking his probation and imposing his prison sentence. *Id.* ¶ 1. Among other arguments, the defendant contended that "he did not knowingly, intelligently and voluntarily waive his right to counsel, notice and a hearing." *Id.* ¶ 13 (internal quotation marks omitted). In rejecting this contention, the Utah Supreme Court reasoned that the probationer's due process rights were satisfied because he had signed a probation extension agreement with his probation officer that said little more than that he was "willing to accept the extension of his probation without a hearing and acknowledged his right to be present at a hearing and to be represented by counsel." *Id.* ¶¶ 14–15. And this court has concluded that a probationer's hearing waiver was knowing and voluntary where the district court simply advised the defendant "of her right to have a hearing on the issue of probation

violation." *State v. Jackson*, 2000 UT App 306U, paras. 3, 4 (per curiam); *see also State v. Hall*, 2000 UT App 384U, para. 2 (per curiam); Wayne R. LaFave et al., Criminal Procedure § 26.10(c), at 891 (3d ed. 2007) ("A finding of a probation violation is also permissible where at the hearing the probationer voluntarily and intelligently admitted the violation, even absent the detailed procedures ordinarily required for the receipt of a plea of guilty in a criminal case.").

¶13 Pacheco fails to demonstrate that the district court erred or, even if it did err, that any error would have been obvious to the court. *See, e.g.*, *State v. Hassan*, 2004 UT 99, ¶ 17, 108 P.3d 695 (rejecting a plain error-claim of a jury trial waiver where "[n]othing in [Utah] case law should have alerted [the district court] that accepting [the defendant's] waiver would be a clear error, or even an error at all"); *State v. Smit*, 2004 UT App 222, ¶ 30, 95 P.3d 1203 (holding that the trial court's "failure to inform [the defendant] of the possibility of jail time as a condition of probation" was not plain error, because "the law [was] unclear" on that issue, and thus "would not have been obvious"); *Larsen v. Johnson*, 958 P.2d 953, 956 (Utah Ct. App. 1998) (holding "[a]ny error [by the trial court] was not obvious because the law in Utah and in other jurisdictions [was] unsettled"). Here, the district court's colloquy ensured that Pacheco—who was represented by counsel and who conferred with his counsel during the colloquy (and apparently before, in the course of making a deal with the State)—knew that he had a right to a hearing and that he was voluntarily waiving that right. After consultation with counsel, he indicated to the district court that he was prepared to admit to the assault and his failure to report the assault to his probation officer in exchange for the State's agreement not to prosecute him for other violations of his probation. And Pacheco agreed he was "doing all of this voluntarily." In addition, at the end of the colloquy, the district court explicitly referred to AP&P's recommendation that

Pacheco's probation be revoked and that he be sent to prison as a consequence of his probation violations.

¶14 Because no case law, rule, or statute requires the district court to provide the colloquy that Pacheco now argues he should have received, we conclude that Pacheco has not shown that there was error here, let alone obvious error. *See State v. Dean*, 2004 UT 63, ¶ 16, 95 P.3d 276 ("To establish that the error should have been obvious to the trial court, [a defendant] must show that the law governing the error was clear at the time the alleged error was made." (citing *State v. Eldredge*, 773 P.2d 29, 25–36 (Utah 1989))). Accordingly, we conclude that Pacheco has not demonstrated that the district court plainly erred in accepting his admissions and revoking his probation.

¶15 Affirmed.

———————