Associate Chief Justice Lee,
concurring in the judgment:
133 Shanelle Gailey has not been deprived of an appeal. She filed one, and we are considering it in our opinions in this case. Thus, the effect of the Plea Withdrawal Statute, Utah Code section 77-18-6, is not to "cut[{ ] off a defendant's right to a direct appeal." Supro T 2. It is only to limit the issues that may be raised therein, by a rule of preservation or waiver.
134 The Plea Withdrawal Statute does not foreclose an appeal. It simply says that a defendant may not seek to "withdraw a plea of guilty" at any time after a "sentence is announced." Urarx Cops § 77-18-6(@)(b). This is a rule of preservation, or in other words, waiver. It says only that a guilty plea may not be challenged further-cither in the district court or on appeal-if it is not withdrawn prior to sentencing. Thus, Gailey has not lost her right to appeal; she simply waived the right to raise a specific issue (the validity of her guilty plea) by not preserving the argument at the time required by the governing law.
85 Rules of this sort are commonplace. They are embedded in our caselaw under the law of preservation[1] and reflected in our rules of procedure.[2] Such rules require parties to raise issues or arguments at specified times and by certain means. And they treat a failure to comply as a waiver of the right to raise such issues later in the litigation.
136 These sorts of rules-in the law of preservation and in our rules of procedure-have never been thought to impinge on the constitutional right to an appeal. Yet the majority proceeds on the premise that they do, It characterizes the Plea Withdrawal Statute as a law that "cuts off" Ms. Gailey's "right to a direct appeal once sentencing is announced," and proceeds to the question whether "the PCRA remedy is ... an adequate substitute for 'a direct appeal." Supra 11 2-8. |
37 The court stops short of resolving that issue on its merits. Because the heart of the issue presented concerns the question whether the right to an appeal encompasses a right to paid counsel, and because Ms. Gailey has not yet been deprived of paid counsel, the majority concludes that her claim to a right to "state-paid counsel" is "not ripe." Supra 1 28. And it dismisses the appeal without opining[3] on the existence of such a right.
138 Yet the court proceeds on the implicit premise that the state constitutional right to appeal encompasses a right to paid counsel. It does so between the lines of its discussion in paragraphs 28 and 29. There the court acknowledges that there is neither a right to "state-paid counsel" nor a "right to effective assistance of counsel" "in postconviction proceedings." Supra "T 28. But it proceeds to note that "although state paid-counsel is not *1286 guaranteed, the PCRA provides that 'the court may, upon the request of an indigent petitioner, appoint counsel on a pro bono basis to represent the petitioner,'" Id. (citation omitted). And it deems Gailey's constitutional argument unripe on that basis, It says that "[wle cannot declare the PCRA remedy to be a constitutional violation of the right to assistance of counsel on appeal based on a hypothetical future denial of counsel." Supra 1 29 (emphasis added).
139 The implication is that Gailey's state constitutional right to an appeal may be implicated if she is not ultimately given counsel in a future PCRA proceeding. That seems problematic,
140 I understand the impulse in favor of constitutional avoidance. Perhaps the court perceives its decision as a matter of restraint. But it strikes me as the opposite, By kicking the can down the road, the court implies that the state constitution may require appointment of counsel in a PCRA proceeding challenging the voluntariness of a guilty plea.
That is a significant proposition, I would not lightly assume that the right to paid counsel is implied by the state constitutional "right to appeal," as those words were originally understood. [4]And I see no reason for us to resolve that matter here, even implicitly.
42 Instead, I would affirm on the threshold basis identified above. Before reaching the question whether the PCRA is an adequate substitute for an appeal, I would first ask whether any such right was meaningfully impinged by the Plea Withdrawal Statute. I would hold that it was not. I would hold that the right to appeal is not implicated by rules dictating the proper means and timing of preserving an issue in the district court. And I would deem the failure to follow such rules a waiver or forfeiture of the right to raise the issue in subsequent proceedings.
43 Such rules may be subject to constitutional challenge, But the basis for challenging them would not be that they eliminate the right of appeal. Rules of preservation and waiver or forfeiture always foreclose the right to raise an issue on appeal. They cannot be unconstitutional on that basis alone, unless we are prepared to say that such rules are per se unconstitutional.
[44 I see no basis for that kind of blanket conclusion. Certainly Gailey has not identified one.
145 At oral argument the question arose as to the legislature's power to dictate rules governing the timing of filings in district court or the law of preservation in the Plea Withdrawal Statute. That may be a fair question for consideration in a future case. See Utax Const, art, VIH, § 4 (providing that this court has the power to "adopt rules of procedure and evidence to be used in courts of the state" and to "manage the appellate process" "by rule," while recognizing the legislature's power to "amend" such rules "upon a vote of two-thirds of all members of both houses"). But no one has challenged the Plea Withdrawal Statute under article 8, section 4. And in the absence of such a challenge, the filing requirement prescribed in this statute is no different than any of a range of other rules of preservation or waiver set forth elsewhere in our law.
46 Such rules do not implicate the state constitutional right to an appeal. I would affirm on that basis,.

. See State v. Rhinehart, 2007 UT 61, % 15, 167 P.3d 1046 ("Except in those instances in which errors affect the court's jurisdiction or where claims of error are expressly preserved for appeal, a conviction or guilty plea acts as a waiver of earlier procedural flaws."); State v. Pinder, 2005 UT 15, % 42, 114 P.3d 551 (precluding defendant from raising evidentiary objections not properly preserved at trial; explaining that defendant "waived these evidentiary arguments because he did not properly preserve" them).

. See Uram R. Crm. P. 12F) (stating the general rule that "[flailure of the defendant to timely raise defenses or objections or to make requests which must be made prior to trial or at the time set by the court shall constitute waiver thereof"); State v. Candland, 2013 UT 55, " 15, 309 P.3d 230 (explaining that where a plea is taken in accordance with criminal rule 11, "many constitutional challenges to the entry of a guilty plea are foreclosed" from being raised on appeal).

. More accurately, the court yields no holding; it nonetheless proceeds to put a thumb on the scale for future reference. In anticipation of an as-yet unfiled PCRA proceeding, the majority comments that "Ms. Gailey would greatly benefit from the appointment of counsel in her postcon-viction proceeding." Supra 1 29, n. 4. That seems inappropriate. If the question presented is unripe, we have no business putting our thumb on the scale for future reference. And in any event the question briefed in this court has little or nothing to do with the issue anticipated by the majority. We have no briefing on the standard for appointment of pro bono counsel under Utah Code section 78B-9-109.
For these reasons I would not opine on Gai-ley's need for pro bono counsel even if I agreed with the balance of the court's analysis. To announce our views on a statute that was not briefed on a case that has not yet been filed strikes me as a very troubling advisory opinion.

. I would interpret the constitutional right to appeal to encompass the core elements of an appeal as traditionally understood at the time of the framing of the Utah Constitution, See State v. Houston, 2015 UT 40, T4 150, 155, 353 P.3d 55 (Lee, J,, concurring in part and concurring in the judgment) (presenting various "premise{s]} of ' originalism in constitutional interpretation," including that a "constitution rooted in 'evolving standards' ... is not a 'written' constitution capable of 'form{[ing] the fundamental and paramount law of the nation,' or of establishing 'certain limits not to be transcended" and 'designed na to be permanent'" (third alteration in original) (quoting Marbury v. Madison, 5 U.S. (1 Cranch) 137, 176-177, 2 L.Ed. 60 (1803))). That inquiry deserves full briefing and careful analysis. I would not assume it away here. And I would not decide it without a careful examination of the historical record (to assess whether the traditional understanding of an "appeal" encompassed a right to paid counsel). We received some briefing on this question in this case (pursuant to a supplemental briefing order), but we have no need to resolve it given that Gailey waived any right to challenge her guilty plea on appeal.